ALTUNA *v.* ORTÍZ ET AL.

APELACIÓN procedente de la Corte de Distrito de Guayama.

No. 30.—Resuelto en mayo 20, 1907.

HIPOTECA—EJECUCIÓN—NULIDAD DE JUICIO EJECUTIVO.—Los acreedores que tuvieran inscrito su derecho con anterioridad á la Ley Hipotecaria, podían optar, para el cobro de su crédito, por el procedimiento sumario establecido en dicha ley ó por el juicio ejecutivo que establecía la Ley de Enjuiciamiento Civil, é iniciado este procedimiento y seguido el juicio por los trámites que dicha ley procesal ordenaba, y solicitada después la nulidad de esas actuaciones, las cuestiones relativas á esa nulidad habrán de ventilarse y resolverse con arreglo á los preceptos de aquella ley.

ID.—FALTA DE FUERZA EJECUTIVA DEL TÍTULO POR DEFECTOS EXTRÍNSECOS.—Con arreglo á la antigua ley procesal, la nulidad de un juicio ejecutivo podía pedirse, entre otros casos, cuando el *título* no tuviera fuerza ejecutiva por defectos extrínsecos, pero estos defectos han de entenderse defectos externos, ó de forma, *del mismo título,* pero de ninguna manera pueden referirse á defectos que sólo afecten á la personalidad de la parte para pedir la ejecución, y que en modo alguno pueden afectar á la eficacia del título ejecutivo.

ID.—FALTA DE CITACIÓN DEL DEUDOR.—También podía pedirse la nulidad del juicio ejecutivo, con arreglo á la antigua ley procesal, cuando el deudor no hubiera sido citado de remate, pero tal citación es válida y eficaz, y debe producir efectos legales, cuando tratándose de bienes propios de un cónyuge, en los que no tenga interés la sociedad de gananciales, se hubiera hecho al dueño de los bienes, sin intervención del otro cónyuge, atendidos los preceptos de los artículos 160 y 161 del Código Civil.

ID.—PERSONALIDAD DE LA EJECUTANTE.—Acreditada la personalidad de la ejecutante, como adjudicataria del crédito hipotecario que se reclama, con el testimonio de las operaciones particionales del causante, la circunstancia de que no se hubiera insertado en él la partida de su defunción, no puede afectar á la eficacia de dicho testimonio, pues al ser aprobadas por la autoridad judicial, hay que presumir que tal extremo fué acreditado y que se llenaron tales formalidades legales.

ID.—INSCRIPCIÓN—SUS EFECTOS.—Cualesquiera que sean los defectos de que adolezca el testimonio de una partición inscrita en el registro por lo que respecta á la adjudicación de derechos reales, mientras subsista tal inscripción, surte efecto legal aun en perjuicio de tercero.

ID.—COBRO DE INTERESES—TERCERO.—Las disposiciones del artículo 114 de la Ley Hipotecaria han de entenderse aplicables á los casos en que haya *un tercero* que hubiera adquirido con posterioridad algún derecho real sobre la cosa hipotecada, pues no habiendo tercero que pueda resultar perjudicado, el acreedor puede cobrar todos los intereses vencidos y no pagados hasta el total solvendo de la deuda principal.

ID.—PRESCRIPCIÓN—ACCIONES HIPOTECARIAS.—La prescripción de que habla el artículo 1867 del Código Civil se refiere sólo á ciertas acciones personales, y no á las que se deriven del contrato de hipoteca, que duran veinte años (art. 1865), plazo de duración que debe entenderse, no sólo para el cobro de la deuda principal, sino también para el de los intereses que se cobren también por la misma acción real hipotecaria.

APELACIÓN—PRUEBAS—ADMISIÓN DE PRUEBA SIN OBJECIÓN DE LA PARTE CONTRARIA.—La parte que hubiere consentido la admisión de una prueba sin objeción ni protesta alguna, no podrá después impugnarla en apelación.

Los hechos están expresados en la opinión.

Abogado del apelante: *Sr. Manuel F. Rossy.*

Abogado del apelado: *Sr. Bernardini.*

EL JUEZ PRESIDENTE SR. QUIÑONES emitió la opinión del tribunal.

Por escritura pública otorgada en Guayama ante el Notario Don José Mariano Capó y Alvarez en 7 de septiembre de 1891, Don Vicente Fernández Monjardín, propietario y vecino de aquella localidad, reconoció deber á su convecino Don Luis Ardura y Berdasco, la suma líquida de 17,000 pesos, moneda corriente en la fecha de dicha escritura, que le ha-

bía facilitado en calidad de préstamo, comprometiéndose á devolverle dicha suma, con el interés del 9 por ciento al año, pagadero por anualidades vencidas, el día 31 de agosto de 1899; é hipotecándole en seguridad del pago, una estancia de su propiedad, radicada en el barrio de Jájome Alto, del término municipal de Cayey, de 1,255 cuerdas de extensión superficial, por los 17,000 pesos de la deuda principal, 3,060 pesos por las dos anualidades de los intereses convenidos, y por 600 pesos más para costas, en el caso de reclamación judicial; é inscribiéndose dicha escritura en el Registro de la Propiedad de Guayama, en 20 de diciembre de 1892.

Ocurrido el fallecimiento del acreedor Don Luis Ardura y Berdasco, en la ciudad de Oviedo, en España, y practicada la partición de sus bienes, se adjudicó el crédito hipotecario de referencia, en parte de pago de su mitad de gananciales, á la viuda Doña Amalia Altuna y Vega, la que lo inscribió á su favor en el Registro de la Propiedad de Guayama, mediante la presentación de un testimonio de la escritura de partición otorgada entre dicha viuda y sus hijos, como herederos de su difunto padre Don Luis Ardura en 29 de enero de 1894.

En 22 de abril de 1904, Doña Amalia Altuna y Vega, por conducto de su abogado Don Tomás Bernardini de la Huerta, entabló, ante el extinguido Tribunal del Distrito de Humacao, al que correspondía entonces el municipio de Guayama, y con arreglo á los trámites de la antigua Ley de Enjuiciamiento Civil, la demanda ejecutiva origen de este pleito, contra Doña Belén Ortíz, viuda de Fernández, y su hija Doña Belén Fernández y Ortíz, como únicas y universales herederas de Don Vicente Fernández Monjardín, que también había fallecido, y en cuya demanda, haciendo relación de los antecedentes que se dejan expuestos, y acompañando la primera copia de la escritura de constitución del crédito hipotecario de que se trata, y de la partición de los bienes de la testamentaría del difunto Don Luís Ardura y Berdasco, con la nota de haber sido inscrita en el Registro de la Propiedad de Guayama,

pidió se requiriera de pago á las deudoras de las cantidades reclamadas, y no verificándolo en el acto, se les embargaran bienes bastantes á cubrirlas, y en su día se dictara sentencia de remate, condenándolas al pago de las mismas, y que se siga la ejecución adelante hasta hacer trance y remate de los bienes embargados y con su producto íntegro pago á la acreedora de las cantidades reclamadas en la demanda y las costas del juicio.

Citadas de remate, Doña Belén Ortíz de Fernández y Doña Belén Fernández y Ortíz se opusieron á la ejecución, alegando, por los fundamentos que estimaron pertinentes á su derecho, la nulidad de la ejecución despachada contra sus bienes ó en otro caso, no haber lugar á pronunciar la sentencia de remate y si á esto tampoco hubiere lugar y se mandara seguir la ejecución adelante, se limitara ésta á las cantidades consignadas en la escritura hipotecaria para intereses y costas ó que por lo menos sólo pudieran cobrarse los últimos cinco años de intereses no cumplidos, con las costas á la ejecutante.

Transferido el pleito al Tribunal de Distrito del Distrito Judicial de Guayama, á virtud de la ley de marzo 10 de 1904, estableciendo la nueva organización judicial de esta Isla y seguido el pleito en adelante por los trámites del nuevo Código de Enjuiciamiento Civil, celebrado el juicio, y practicadas las pruebas, dictó sentencia el juez del Tribunal del Distrito de Guayama en 13 de diciembre de 1905, por la que declaró con lugar la demanda ordenando que la demandante Doña Amalia Altuna y Vega obtuviera y recobrara de las demandadas Doña Belén Ortíz, viuda de Fernández y Doña Belén Fernández y Ortíz, la cantidad de 9,690 dollars de capital más 6,849 dollars de intereses vencidos desde el 31 de agosto de 1895, hasta la interposición de la demanda, procedente todo de la escritura de hipoteca otorgada por Don Vicente Fernández Monjardín á favor de Don Luis Ardura; más los intereses devengados desde la interposición de la demanda, al tipo estipulado del 9 por ciento anual, más las costas; todo lo cual se hará efectivo en moneda corriente de los

Estados Unidos; y que para hacer efectiva esta sentencia se se librara ejecución contra los bienes de las demandadas, sin perjuicio de los derechos que la Ley Hipotecaria reconoce al primer hipotecario sobre la finca gravada.

Contra esta sentencia interpuso apelación la representación de las demandadas Doña Belén Ortíz de Fernández y Doña Belén Fernández y Ortíz; y elevadas á esta superioridad las copias prevenidas de los autos, y presentado el alegato de las apelantes, se señaló día para la vista, que se celebró con asistencia de los abogados defensores de ambas partes.

En su alegato reproduce la representación de las apelantes sustancialmente, las mismas pretensiones que formularan en el inferior en su escrito de oposición á la demanda; que se declare nulo el juicio, ó en su defecto, que se declare no haber lugar á dictar sentencia de remate; y cuando á esto tampoco hubiere lugar y se ordenare seguir la ejecución adelante, que se entienda sólo por las cantidades consignadas en la escritura hipotecaria para intereses y costas, ó á lo sumo, por los intereses de los últimos cinco años no cumplidos, con las costas á la ejecutante.

Nos ocuparemos de todas estas conclusiones sometidas por la representación de las apelantes á la resolución de esta Corte Suprema, por el mismo orden en que han sido formuladas.

La primera ó sea la de nulidad del juicio ejecutivo, se hace consistir en que, careciendo de fuerza ejecutiva el título presentado por Doña Amalia Altuna, porque ejercitando en su demanda el carácter de adjudicataria del crédito hipotecario de su difunto esposo Don Luis Ardura, á virtud de la adjudicación que de dicho crédito se le había hecho en la escritura de partición, de la testamentaría de su difunto esposo, ni aparecía legalizada en forma dicha escritura de partición, como correspondía, por haber sido otorgada en país extranjero, como lo era España á la fecha en que fué presentada en juicio dicha escritura, ó sea en abril de 1904, ni se acreditaba el fallecimiento del citado Ardura por medio del

correspondiente certificado de defunción, ni se presentaba
tampoco una copia fehaciente de su testamento, documentos
todos que formaban parte integrante del título ejecutivo, era
evidente que éste carecía de fuerza ejecutiva y, por consi-
guiente, que la ejecución despachada contra los bienes de la
sucesión deudora era nula desde su inicio, con arreglo al artí-
culo 1465 de la antigua Ley de Enjuiciamiento Civil, que regía
á la fecha en que fué despachada la ejecución, y según el cual
podía pedirse la nulidad del juicio ejecutivo, entre otros casos
"cuando el título no tuviere fuerza ejecutiva, ya por defectos
extrínsecos, ya por no haber vencido el plazo ó no ser exigible
la cantidad ó ésta ilíquida."

Empero, no estamos conformes con esta alegación del ilus-
trado defensor de las apelantes.

Convenimos con él, en que habiendo formulado la demanda
Doña Amalia Altuna en 22 de abril de 1904, cuando aún estaba
vigente la antigua Ley de Enjuiciamiento Civil, modificada
en parte por la Orden General No. 118, y habiendo optado por
los trámites del juicio ejecutivo que aquella ley establecía, con
preferencia al procedimiento sumario ordenado por la nueva
Ley Hipotecaria de esta Isla para el cobro de los créditos de
aquella naturaleza en uso del derecho que para hacerlo le con-
cedía el artículo 175 del Reglamento de la misma ley, al dis-
poner que los acreedores que tuvieran inscrito su derecho con
anterioridad á la nueva ley hipotecaria, podrían optar por el
procedimiento sumario establecido por la misma ley, ó seguir
el procedimiento ejecutivo antiguo, y encontrándose precisa-
mente en este caso Doña Amalia Altuna, cuyo crédito hipote-
cario había nacido y se había inscrito con mucha anterioridad
á la fecha en que comenzara á regir la ley hipotecaria en esta
Isla, es claro que habiendo optado la ejecutante por los trá-
mites del juicio ejecutivo que establecía la antigua Ley de
Enjuiciamiento Civil, vigente á la fecha de la presentación de
la demanda, y seguido el juicio por los trámites que dicha ley
ordenaba hasta el escrito de oposición á la demanda, inclu-
sive, en el que se plantearon las cuestiones sobre nulidad del

juicio y las demás que fueron propuestas oportunamente y que han sido ventiladas y resueltas por el juez del tribunal inferior en su sentencia, es claro, repetimos, que para resolver esas cuestiones en la apelación pendiente, tenemos que referirnos á la antigua ley procesal, porque si hubiéramos de acomodarnos al nuevo Código de Enjuiciamiento Civil para la resolución de esas cuestiones, le daríamos á éste una fuerza retroactiva de que carece.

Estamos, pues, de acuerdo con la defensa de las apelantes, en que todas las cuestiones planteadas en estos autos ejecutivos deben ser resueltas con arreglo á las prescripciones de la Ley de Enjuiciamiento Civil antigua y no con arreglo á la moderna, que no había comenzado á regir cuando todas aquellas cuestiones fueron propuestas y quedó planteado el problema jurídico á resolver en los presentes autos.

Ahora bien. ¿Es realmente nula, con arreglo á la antigua ley, la ejecución despachada en estos autos contra los bienes de la Sucesión de Don Vicente Fernández Monjardín? Entendemos que nó.

Según el artículo 1465 de la antigua ley procesal que se cita como fundamento de sus alegaciones por la defensa de las apelantes, podía pedirse la nulidad del juicio ejecutivo, entre otros casos, como ya hemos dicho, cuando el título no tuviera fuerza ejecutiva, yá por defectos extrínsecos, ó por no haber vencido el plazo, ó no ser exigible la cantidad, ó esta ilíquida.

En el presente caso no se combate la fuerza ejecutiva del título presentado por defectos intrínsecos, ó que afectaran á la obligación en su parte interna, sobre cuyo particular nada se arguye, sino por defectos extrínsecos, ó de forma, considerando las apelantes como tales, la falta de presentación del testamento y de la partida de defunción del acreedor Don Luis Ardura y la falta de legalización de la escritura de partición que presenta la ejecutante Doña Amalia Altuna y Vega para acreditar que le había sido trasmitido legítimamente el crédito hipotecario de su difunto marido.

Empero, nosotros creemos que la representación de las apelantes le da á ese artículo una interpretación equivocada y, por consiguiente, una errónea aplicación.

Al decir ese artículo en su número 2°. que podía pedirse la nulidad del juicio cuando el *título* no tuviera fuerza ejecutiva por defectos extrínsecos, se refería sólo á los defectos externos, ó de forma, del mismo título, como por ejemplo, si el título presentado consistía en una escritura pública, si no era primera copia, ó si era segunda copia, si no había sido expedida mediante mandamiento judicial y previa citación de la persona á quien debía perjudicar, ó de su causante, como lo exigía el artículo 1427 de la misma ley al enumerar los títulos que traían aparejada ejecución, y los requisitos de que debían estar revestidos. A estos defectos extrínsecos del título era á lo que se refería el artículo 1465 de la antigua ley procesal al decir en su número 2°. que podía pedirse la nulidad del juicio cuando el título no tuviera fuerza ejecutiva por defectos extrínsecos; pero de ninguna manera se refería á los defectos que la defensa de las apelantes le atribuye al título presentado por Doña Amalia Altuna, que sólo afectan á la personalidad de esta señora para pedir la ejecución, como adjudicataria del crédito hipotecario de su difunto marido, y que en manera alguna pueden confundirse con los defectos extrínsecos del título á que se refiere el número 2°. del artículo citado de la ley procesal antigua. En el presente caso el título ejecutivo lo constituye la escritura hipotecaria otorgada por Don Vicente Fernández Monjardín á favor de Don Luis Ardura y Berdasco, en Guayama á 7 de septiembre de 1891, y contra esta escritura no se ha objetado, ni podía objetarse ningún defecto, ni en su parte interna, porque la obligación que contenía, era perfectamente válida y ejecutiva, por ser de plazo vencido y por cantidad líquida en dinero efectivo, que excedía de 1,000 pesetas, ni en su parte externa, ó extrínseca, puesto que la escritura presentada era primera copia, expedida por el mismo notario que la había autorizado, y que había sido inscrita en el registro de la propiedad corres-

pondiente, como lo acreditaba la nota puesta al pie de la misma escritura; defectos que de haber existido, sí que hubieran podido alegarse como motivos para pedir la nulidad del juicio por defectos extrínsecos del título, que lo privaban de la fuerza ejecutiva. Pero nada de esto se ha alegado en el presente caso; y por consiguiente, la nulidad pretendida no puede declararse por motivos que, de existir, sólo afectarían á la personalidad de la ejecutante, en manera alguna á la eficacia del título ejecutivo presentado.

Esto por lo que respecta al primer motivo de nulidad alegado por la representación de las apelantes.

En cuanto al segundo motivo de nulidad que también se alega, y consistente en no haber citado de remate al esposo de Doña Belén Fernández y Ortíz, una de las demandadas, tampoco es de estimarse. El artículo 1465 de la Ley Procesal antigua, del que ya nos hemos ocupado repetidas veces, establecía en su número 3º. que también podía pedirse la nulidad del juicio ejecutivo, cuando el deudor no hubiera sido citado de remate, diligencia que equivalía á la citación y emplazamiento para contestar la demanda, con las formalidades establecidas por la misma ley; pero esta disposición se aplica también por la defensa de las apelantes, con manifiesto error en el presente caso.

El artículo 160 del Nuevo Código Civil, que ya regía hacía dos años cuando la diligencia de citación de remate de Doña Belén Fernández tuvo lugar en este juicio ejecutivo, confiere á cada uno de los cónyuges la libre disposición y administración de sus bienes propios, y el artículo siguiente autoriza á la mujer casada para contratar por sí y comparecer en juicio por lo que se refiere á la defensa de sus derechos ó de los bienes de su propiedad particular; y como en este juicio ejecutivo Doña Belén Fernández y Ortíz defiende sus derechos y sus bienes propios, adquiridos por herencia de su difunto padre Don Vicente Fernández Monjardín, y en los cuales nada tiene que ver su marido, ni la sociedad de gananciales, luego el acto de la citación de remate que se entendió sólo con Doña

Belén Fernández y Ortíz sin intervención de su marido, fué un acto perfectamente válido y eficaz y debe surtir efectos eficaces en el presente juicio.

En cuanto á la excepción de falta de personalidad de la ejecutante Doña Amalia Altuna, que se alega también subsidiariamente, para el caso de no declararse la nulidad del juicio ejecutivo, y que se hace consistir en no haber acreditado aquella señora la trasmisión á su favor del crédito hipotecario de su difunto esposo, con documentos fehacientes, tampoco puede ser admitida.

En primer lugar, porque Doña Amalia Altuna ha presentado para acreditar su personalidad, ó sea el carácter con que se presenta en juicio como adjudicataria del crédito hipotecario de que se trata, un testimonio de las operaciones particionales de la testamentaría de su difunto esposo Don Luis Ardura, aprobadas con citación y audiencia de todos los interesados en dicha testamentaría por el juez de primera Instancia de la ciudad de Oviedo, en España, y protocoladas en el oficio del notario de dicha ciudad, Don Secundino de la Torre y Ortíz, en 29 de enero de 1894, y en cuyo testimonio obra inserto, según lo consigna en la sentencia el juez de la corte sentenciadora, el testamento de Don Luis Ardura; y aunque no se dice que también se hubiera insertado en él, la partida de defunción del citado Ardura, es de presumirse que se hubiera acreditado en forma su fallecimiento, porque sin este requisito no hubiera podido el juez aprobar las operaciones testamentarias practicadas, y si las aprobó, es de presumirse que se hubieran llenado todas las formalidades que requería la ley en tales casos.

Esto en primer lugar. En segundo lugar, que cualesquiera que fueran los defectos de que adoleciera el testimonio presentado, es lo cierto, que fué inscrito en el Registro de la Propiedad de Guayama, por lo que respecta á la trasmisión del crédito hipotecario de que se trata, á favor de Doña Amalia Altuna, como lo acredita la certificación del registrador de la propiedad de aquel partido que obra en autos, y cuya inscrip-

ción, mientras subsista y no se declare nula por los tribunales de justicia en el juicio plenario correspondiente, garantiza á favor de dicha señora la propiedad del crédito hipotecario de referencia aún en perjuicio de tercero, con arreglo á los artículos 23, 24 y 25 de la Ley Hipotecaria vigente en esta Isla; y en tercero y último lugar, que habiendo sido admitida esa escritura por vía de prueba en el acto del juicio, sin excepción ni protesta alguna por parte de las demandadas, hoy apelantes, no pueden éstas objetar nada contra ella en el presente recurso por haber consentido su admisión y porque nadie puede ir contra sus propios actos.

La última de las excepciones opuestas por la representación de las apelantes, para el caso de que se desestimara la de falta de personalidad, y hubiera de dictarse, en consecuencia, sentencia de remate, es la de *pluspetición,* que también podía alegarse en el juicio ejecutivo, con arreglo al artículo 1464 de la misma ley procesal antigua, fundada en que, habiéndose limitado la hipoteca constituída en la escritura para asegurar el pago de los intereses, á sólo dos anualidades que el acreedor podía cobrar en perjuicio de tercero, montantes en junto á la suma de 3,060 pesos mejicanos, equivalentes á 1,744 pesos 20 centavos oro americano, sólo esta suma podía cobrar la ejecutante en concepto de interéses, y no todos los vencidos desde el año 1895 hasta el efectivo pago del capital como se ordena en la sentencia, ó á lo sumo, los correspondientes á los cinco años últimos, por deber estimarse prescritos los anteriores, á tenor del artículo 1867 del nuevo Código Civil, según el que prescriben por el transcurso de cinco años entre otras las acciones para exigir cualesquiera pagos que deban hacerse por años, ó en plazos más breves.

Empero, estas alegaciones de la defensa de las apelantes, tampoco son admisibles.

Doña Amalia Altuna tiene perfecto derecho á cobrar á la sucesión deudora, todos los intereses vencidos desde el 31 de agosto de 1895, en que verificó el último pago, hasta el día en que haga efectivo el capital, al tipo convenido del 9 por ciento

anual, como lo ordena la sentencia. Es cierto que, según el artículo 114 de la Ley Hipotecaria de esta Isla, sólo pueden cobrarse con perjuicio de tercero, los intereses de los dos últimos años transcurridos y la parte vencida de la anualidad corriente; pero esto se éntiende como lo expresa el mismo artículo, *en perjuicio de tercero,* es decir, en perjuicio de cualquier persona que obtenga con posterioridad algún derecho real sobre la cosa hipotecada; pues no habiendo tercero que pueda resultar perjudicado, el acreedor puede cobrar todos los intereses vencidos y no pagados, como lo establece el artículo 147 de la misma Ley Hipotecaria al disponer que, ''el acreedor hipotecario podrá repetir contra los bienes hipotecados *por el pago de los intereses vencidos,* cualquiera que sea la época en que deba verificarse el reintegro del capital; mas si hubiere un tercero interesado en dichos bienes á quien pueda perjudicar la repetición, no podrá exceder la cantidad que por ella se reclame, de la correspondiente á los réditos de los dos últimos años transcurridos y no pagados, y la parte vencida de la anualidad corriente.''

Doña Amalia Altuna, pues, ha estado en su derecho al pedir, y el juez no ha cometido ningún error al concedérselo, que se le paguen todos los intereses vencidos hasta la fecha de la demanda, y los que se venzan después hasta el total solvendo de la deuda principal, al tipo convenido del 9 por ciento al año, puesto que no existe un tercero que haya adquirido posteriormente algún derecho sobre los bienes hipotecados y que pueda resultar perjudicado.

En cuanto á la prescripción de los intereses que excedan de los últimos cinco años, tampoco pueden invocarla las apelantes; pues aparte de que la prescripción de que habla el artículo 1867 del nuevo Código Civil, se refiere sólo á ciertas acciones personales, en manera alguna á las que se derivan del contrato de hipotecas, que, según el artículo 1865 del propio Código, duran veinte años, plazo de duración que debe entenderse, no sólo para el cobro de la deuda principal, sino también para el de los intereses, que se cobran también por la misma

acción real hipotecaria, resulta también probado en el juicio que Doña Amalia Altuna ha hecho requerir diferentes veces á la sucesión deudora para el pago de los intereses vencidos desde el año de 1895, y, por consiguiente, la prescripción, caso de ser aplicable en el presente caso, quedó interrumpida con arreglo al artículo 1874 del propio Código Civil, según el cual "la prescripción de las acciones se interrumpe por su ejercicio ante los tribunales, *por reclamación extrajudicial del acreedor,* y por cualquier acto de reconocimiento de la deuda por el deudor."

En mérito de todas las consideraciones expuestas, somos de parecer que la corte sentenciadora no ha cometido ningún error en su sentencia, y, por consiguiente, que debe ser ésta confirmada, con las costas á las apelantes.

*Confirmada.*

Jueces concurrentes: Sres. Hernández, Figueras y Wolf. Juez disidente: Sr. MacLeary.