CC-1999-957

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Sonia Campos Ledesma, Myriam Campos Ledesma y Margarita Campos Ledesma<br>        Demandantes-recurridas<br><br>                v.<br><br>La Compañía de Fomento Industrial de Puerto Rico<br><br>        Demandada-peticionaria | Certiorari<br><br>2001 TSPR 1 |

Número del Caso: CC-1999-957

Fecha: 9/enero/2001

Tribunal de Circuito de Apelaciones:

                            Circuito Regional I

Juez Ponente:

                            Hon. Rafael Ortiz Carrión

Abogada de la Parte Peticionaria:

                            Lcda. Olga I. Marcano Benítez

Abogado de la Parte Recurrida:

                            Lcdo. José Angel Rey

Materia: Cobro de Dinero

        Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Sonia Campos Ledesma, Myriam
Campos Ledesma y Margarita
Campos Ledesma

    Demandantes-recurridas

         v.                      CC-1999-957        CERTIORARI

La Compañía de Fomento
Industrial de Puerto Rico

    Demandada-recurrente

OPINIÓN DEL TRIBUNAL EMITIDA POR EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ

San Juan, Puerto Rico, a 9 de enero de 2001

El 11 de septiembre de 1979, los esposos, Enrique Campos Toro y Margarita Ledesma suscribieron un pagaré a favor de la Compañía de Fomento Industrial de Puerto Rico (Fomento) por la suma de $400,000.00, con intereses al 8% anual hasta su total y completo pago. Para garantizar el pago de esta obligación, los esposos Campos- Ledesma constituyeron una hipoteca voluntaria sobre un inmueble de su propiedad, ubicado en el Barrio Guaracanal en Río Piedras, Puerto Rico. Posteriormente, los esposos Campos-Ledesma fallecieron sin haber satisfecho el principal ni los intereses de dicha obligación, siendo sus únicas y universales herederas Sonia, Myriam y Margarita Campos Ledesma, las aquí recurridas.

El 31 de octubre de 1994, la Autoridad de Carreteras y Transportación de Puerto Rico inició un procedimiento para la expropiación forzosa del inmueble hipotecado; como justa compensación consignó en el tribunal una suma de dinero, a ser distribuida la misma entre las hermanas Campos Ledesma y Fomento, conforme a sus respectivos derechos. Al plantearse la distribución de la suma consignada, Fomento alegó que las recurridas adeudaban el principal y los intereses acumulados desde la fecha en que se suscribió el pagaré hasta la fecha en que se efectúo la expropiación del inmueble hipotecado. Por su parte, las recurridas alegaron que sólo adeudaban el principal y los intereses acumulados durante los cinco años anteriores a la fecha de expropiación.

Con el propósito de dilucidar la controversia, las herederas de los esposos Campos-Ledesma presentaron demanda ante el Tribunal de Primera Instancia, Sala Superior de San Juan, contra Fomento. Contestada la demanda, las partes estipularon los hechos esenciales con el propósito de que el tribunal de instancia pudiera resolver la controversia planteada mediante el mecanismo procesal de la sentencia sumaria. Además, ambas partes sometieron sendos memorandos de derecho en apoyo de sus respectivas posiciones.

El tribunal de primera instancia acogió la demanda como una solicitud de sentencia declaratoria y el 20 de mayo de 1999 emitió sentencia resolviendo que las demandantes respondían por los intereses acumulados por el pagaré "de forma ilimitada", es decir, desde la fecha en que se otorgó el pagaré, el 11 de septiembre de 1979, hasta su total saldo.

Inconforme, la parte demandante presentó un recurso de apelación ante el Tribunal de Circuito de Apelaciones. El 18 de noviembre de 1999, el foro intermedio apelativo emitió sentencia mediante la cual revocó la determinación de instancia, resolviendo que la parte demandante adeudaba a Fomento $160,000.00 en concepto de intereses acumulados durante los cinco años anteriores a la fecha de expropiación del inmueble hipotecado ya que los intereses acumulados con anterioridad a dichos años estaban prescritos.

De dicha sentencia recurrió Fomento ante este Tribunal --vía *certiorari*-- alegando que el Tribunal de Circuito de Apelaciones había errado:

> "...al resolver que los intereses devengados por el pagaré hipotecario objeto del presente caso están sujetos e la prescripción por el transcurso de cinco (5) años dispuesto por el Artículo 1866 del Código Civil".

El 29 de diciembre de 1999, la parte demandante-recurrida presentó su oposición a la solicitud de *certiorari.* Expedimos el auto de *certiorari*; posteriormente decidimos acoger, a solicitud de las partes, los escritos iniciales de ésta como sus alegatos. Con el beneficio de ambas comparecencias, resolvemos.

I

La prescripción extintiva es un instituto propio de derecho civil inextricablemente unido al derecho que se intenta reivindicar. <u>Olmo</u> v. <u>Young & Rubicam of P.R., Inc.,</u> 110 D.P.R. 740 (1981). Su existencia responde a una política firmemente establecida para la solución expedita de las reclamaciones. Su propósito es evitar que el poder público proteja por tiempo indefinido los derechos no reclamados por su titular y que tampoco han sido reconocidos por aquellos sobre quienes pesan. M. Albaladejo, <u>Derecho Civil</u>, Barcelona, Ed. Bosch, 1989, T. I, Vol. 2, pág. 496. La prescripción castiga la inercia a la vez que estimula el ejercicio rápido de las acciones. Mientras más cerca de su origen se entablen las reclamaciones, más se asegura que el transcurso del tiempo no confundirá ni borrará el esclarecimiento de la verdad en sus dimensiones de responsabilidad y evaluación de la cuantía.

Los estatutos prescriptivos van más allá de lo que el legislador considera una sana política pública. También se asientan en la experiencia humana de que las reclamaciones válidas se accionan inmediatamente y no se abandonan. Los estatutos en cuestión promueven la justicia al evitar las sorpresas que genera la resucitación de reclamaciones viejas, además de las consecuencias inevitables del transcurso del tiempo, tales como: pérdida de evidencia, memoria imprecisa y dificultad para encontrar testigos. Como vemos, los estatutos prescriptivos fomentan la estabilidad

jurídica de las relaciones y la seguridad en el tráfico jurídico. <u>Culebra Enterprises Corp.</u> v. <u>E.L.A.</u>, 127 D.P.R. 943 (1991).

El esquema estatutario de la prescripción extintiva en nuestro Código Civil está predicado en la coexistencia de un término genérico o de prescripción ordinaria y una serie de términos de prescripción extraordinaria. Para las acciones personales sin término, el ordinario es de quince (15) años. Artículo 1864 del Código Civil, 31 L.P.R.A. sec. 5294. El Artículo 1964 del Código Civil español   --Artículo 1864 nuestro-- ha sido criticado por su excesividad "en relación con las exigencias de nuestro tiempo", mientras que los códigos modernos estatuyen un término más corto que "supone un lapso prudente y no excesivo de tiempo". Q.M. Scaevola, <u>Código Civil</u>, Madrid, Ed. Reus, 1965, T. XXXII, Vol. 2, págs. 800-801. Ya en <u>Olmo</u> v. <u>Young & Rubicam of P.R., Inc.</u>, ante, habíamos aludido a la tendencia moderna de acortar los términos.

Además de la prescripción ordinaria, el legislador señaló una serie de términos para distintas reclamaciones. Generalmente, excepto las acciones reales sobre bienes inmuebles que prescriben a los treinta (30) años, Artículo 1863 del Código Civil, 31 L.P.R.A. Sec. 5293, y las hipotecarias a los veinte (20) años, Artículo 1864 del Código Civil, ante, los de prescripción extraordinaria son mucho más cortos, a saber: un (1) año para recobrar o retener la posesión y para exigir la responsabilidad civil por las obligaciones derivadas de la culpa o negligencia, Artículo 1868 del Código Civil, 31 L.P.R.A. Sec. 5298; tres (3) años para ejercer acciones en reclamación de servicios prestados, Artículo 1867 del Código Civil, 31 L.P.R.A. Sec. 5297; y cinco (5) años para exigir el cumplimiento del pago de pensiones alimentarias, satisfacer el precio de arriendos y de cualquier otro pago que deba hacerse por años o en plazos más breves, Artículo 1866 del Código Civil, 31 L.P.R.A. Sec. 5296.

En <u>Asoc. Empleados E.L.A.</u> v. <u>Guillén</u>, 116 D.P.R. 425 (1985), tuvimos la oportunidad de interpretar el citado inciso (3) del Artículo 1866 del Código Civil en relación con una deuda de capital pagadera en plazos mensuales de principal e intereses compensatorios. Luego de analizar las distintas posiciones adoptadas por los tratadistas españoles y de otras

jurisdicciones civilistas, y siguiendo la tendencia moderna de acortar los términos prescriptivos, reconocimos que el plazo quinquenal aplica a los intereses compensatorios periódicos acumulados.

Posteriormente, en Banco de Ponce v. Barnes, 125 D.P.R. 526 (1990), tomando en consideración que la prescripción quinquenal tiene como propósito principal "la evitación del perjuicio del deudor", adoptamos la interpretación del Artículo 1866 del Código Civil, ante, más acorde con dicha finalidad, a los fines de que el inciso (3) de dicho Artículo incluye dentro de su aplicación no sólo los intereses compensatorios sino también los moratorios.[1]

Sin embargo, en ninguno de los dos casos antes citados, los intereses estaban garantizados por una hipoteca. Debemos, entonces, examinar la Ley Hipotecaria para determinar cual es el término prescriptivo que debe prevalecer para recobrar los intereses devengados que están así garantizados.[2]

---

[1] En Banco de Ponce v. Barnés, expresamos que:

"Cada uno de estos períodos de prescripción extraordinaria es el resultado de un consenso entre los principios que fomentan la prescripción y las particularidades intrínsecas de cada una de esas acciones. Así, el plazo de cinco (5) años esta inspirado en un criterio de *favor debitoris*. Con éste, se pretende: '...impedir que los deudores se vean perjudicados, mediante una continua y sucesiva acumulación de pagos, que puede incluso, en ocasiones, conducirles a la ruina, porque, si el pago distanciado y periódico de pequeñas sumas es algo que cabe casi siempre dentro de las fuerzas o de las posibilidades económicas del deudor, en cambio la conversión de estas pequeñas deudas temporalmente distanciadas en una única deuda acumulada, de mayor importe, por obra de la voluntad del acreedor, que deja intencionadamente de reclamar las prestaciones durante algún tiempo, puede conducir a graves perjuicios. La prescripción quinquenal, como prescripción privilegiada, parece, pues, que encuentra su fundamento en esta idea de favorecer o, al menos, de proteger a los pequeños deudores...' La finalidad perseguida por la norma —la evitación del perjuicio del deudor— parece, en este punto, el primer criterio hermenéutico digno de tenerse en cuenta". (Citas omitidas.)

[2] Nuestra Ley Hipotecaria incorpora tres (3) sistemas diferentes sobre garantías, a saber: garantía indefinida, garantía de tope máximo y garantía de ampliación de hipoteca. En el primero, sistema de garantía indefinida, "[l]a hipoteca asegura ilimitadamente todos los intereses que devengue el crédito hipotecario". R.M. Roca Sastre, Derecho Hipotecario, 6ta Ed., Barcelona, Ed. Bosch, 1968, T. IV, Vol. 1, pág. 507. Bajo el segundo, sistema de tope máximo, "[l]a hipoteca por el capital, únicamente se extiende *ope legis* a garantizar determinada suma o montante de intereses. Dicho tope

II

Vigente la antigua Ley Hipotecaria, resolvimos Altuna v. Ortiz, 12 D.P.R. 330 (1907). En dicho caso establecimos que el acreedor podía exigir en el procedimiento hipotecario todos los intereses vencidos hasta el día en que haga efectivo el capital, siempre que no exista un tercero que haya adquirido posteriormente algún derecho sobre los bienes hipotecados, que pueda resultar perjudicado. En aquella ocasión especificamos que, el Artículo 1867 del Código Civil, se refiere sólo a ciertas acciones personales, y que en manera alguna a las que se derivan del contrato de hipotecas, que según el Artículo 1865 del propio Código, duran veinte años, plazo de duración que debe entenderse, no sólo para el cobro de la deuda principal, sino también para el de los intereses, que se cobran también por la misma acción real hipotecaria.

Sin embargo, como resultado de la reforma hipotecaria, el 5 de agosto de 1979, se aprobó una nueva Ley Hipotecaria (30 L.P.R.A. Sec. 2001 *et seq*). En dicha ley se hizo constar que "[e]n ningún caso podrá estipularse que la hipoteca asegure intereses por un plazo superior a cinco años. Cuando se fije en la escritura una cantidad global para responder del pago de

---

puede consistir en un determinado número de anualidades de intereses o en un tanto por ciento global sobre el capital; generalmente se adopta el primero". Roca Sastre, ante, pág. 508. Finalmente, el sistema de ampliación de hipoteca , "garantiza únicamente el capital del crédito, pero no los intereses; no obstante, como a cada vencimiento de éstos surge un nuevo crédito derivado del principal, se atribuye al acreedor la facultad de exigir que se le constituya una nueva hipoteca de ampliación, por todos los intereses impagados, y así sucesivamente". (Énfasis suprimido.) Roca Sastre, ante, pág. 509.

Según las circunstancias reinantes prevalecerá uno u otro de los sistemas antes definidos. Así, mientras no haya un tercero que pueda resultar perjudicado --cuando después de constituirse la hipoteca no se haya otorgado actos de enajenación o gravamen de la finca hipotecada-- impera el sistema de garantía indefinida. (Enfasis nuestro.) Ponce Federal Savings v. Registrador, 89 D.P.R. 882 (1964); Díaz v. Quiñones , 68 D.P.R. 249 (1948). Es decir, la finca hipotecada responde no sólo del capital sino que de los intereses vencidos no pagados ni prescritos, pues la limitación de las dos anualidades y parte vencida de la corriente a la fecha de hacerse efectivo el crédito hipotecario, es únicamente para el caso de que haya un tercero a quien ese aseguramiento perjudique. Lacruz Berdejo, Elementos de Derecho Civil, III (Derechos Reales), pág.333.

Por su parte, el artículo 167 de la Ley Hipotecaria, 30 L.P.R.A. Sec. 2563, admite la posibilidad de obtener una ampliación de la garantía respecto de los intereses devengados que no resulten asegurados con la hipoteca.

intereses no podrá el mismo exceder del importe correspondiente a los intereses de cinco anualidades". (Énfasis nuestro.) Artículo 166 de la Ley Hipotecaria, 30 L.P.R.A. sec. 2562. De igual forma, la Sección 155.1 del Reglamento General para la Ejecución de la Ley Hipotecaria y del Registro de la Propiedad, Núm. 2674 de 9 de julio de 1980, según enmendado, dispone que se "[p]odrá pactar la cuantía de los intereses asegurados con referencia al interés legal vigente en un plazo que no deberá exceder de 5 años".

De lo anterior notamos que el legislador establece un tratamiento distinto al capital y a los intereses, rechazando la posibilidad de que las partes estipulen que la hipoteca asegure intereses por más de cinco años. Lo que significa que el bien hipotecado, en ningún caso, responderá por los intereses que excedan los devengados durante cinco años. A tales efectos, nos dice el ilustre tratadista español Albaladejo, al comentar la prescripción de los intereses, que:

> "[e]l plazo de veinte años que el Artículo 1.964 del Código Civil [Artículo 1864 nuestro] señala para la acción hipotecaria se refiere exclusivamente a la dirigida a exigir el capital. Dicho plazo no afecta a los intereses, cuya sede más apropiada parece que es la del numero 3.° del Artículo 1.966 [Artículo 1866 nuestro]. Así se infiere, además, del tratamiento que a la cobertura de los intereses del crédito hipotecario dispensa la legislación hipotecaria." Albaladejo, Comentarios al Código Civil y Compilaciones Forales, Madrid, Edersa, 1983, Tomo XXV, Vol. II, pág. 219.

Con esta interpretación coincide Puig Brutau, para quien "[l]a prescripción quinquenal es igualmente aplicable cuando los intereses están garantizados con hipoteca". Puig Brutau, J., Caducidad, prescripción extintiva y usucapión, Barcelona, Ed. Bosch, 1996, pág. 131.

Además, así lo confirmó el Tribunal Supremo de España en la sentencia de 12 de marzo de 1985 (RJA, núm. 1.153), al decidir que la prescripción quinquenal incluye los intereses garantizados mediante hipoteca. Dicho tribunal, al interpretar el Artículo 114 de la Ley Hipotecaria, de donde proviene nuestro Artículo 166 de la Ley Hipotecaria, ante, dispuso que:

> "...sin desconocer la evidencia de que en nuestro ordenamiento positivo el crédito garantizado con hipoteca prescribe a los veinte años, con lo que se amplia en cinco el término ordinario de quince aplicable a los créditos no asegurados con ese derecho de realización de valor ... en modo alguno cabe sostener con fundamento que si los intereses están cubiertos con la hipoteca la prescripción quinquenal ... es inaplicable,

y por consiguiente el conjunto de lo adeudado habrá de regularse por aquel plazo único de veinte años; pues amén de que en la hipótesis de duda siempre tendría que operar un criterio de favor *debitoris* ... tampoco del texto del artículo ciento cuarenta y seis [de donde proviene nuestro Artículo 190 de la Ley Hipotecaria, 30 L.P.R.A. 2609[3]] puede inferirse que esté excluida la norma ordinaria sobre su extinción, de suerte que si no hay tercero interesado en los bienes hipotecados la repetición contra ellos puede exceder del plazo máximo de cinco años ... al contrario lo que tal precepto demuestra ... es que en perjuicio de tercero los intereses asegurados se limitarán a los dos últimos años transcurridos y a la parte vencida de la anualidad corriente, pero no que en otro caso puedan alcanzar el límite de tiempo que conviene al capital...". Sentencia del Tribunal Supremo de España de 12 de marzo de 1985.

Adviértase que en el caso de autos el derecho prescrito fue adquirido en virtud de una cláusula contractual; esto es, los intereses fueron pactados mediante un contrato de préstamo. Por ser un derecho adquirido contractualmente, somos del criterio que <u>no</u> debe aplicarse una norma distinta meramente por ser el Gobierno la parte contratante afectada. A estos efectos, en <u>De Jesús González</u> v. <u>Autoridad de Carreteras</u>, res. el 30 de abril de 1999 (99 TSPR 66), expresamos que:

"Como norma general, para los efectos de la aplicación de las disposiciones y doctrinas referentes a los contratos, <u>el Estado Libre Asociado de Puerto Rico se considera como un contratante privado</u>. Cuando el Estado contrata, la interpretación del contrato debe hacerse como si se tratara de una contratación entre dos personas particulares. <u>Zequeira</u> v. <u>C.R.U.V.</u>, 83 D.P.R. 878, 880-881 (1967); <u>Rodríguez</u> v. <u>Municipio</u>, 75 D.P.R. 479, 494 (1953). Ello significa que una vez el Estado suscribe un contrato con una persona privada, <u>ambos están obligados por las normas generales relativas a los contratos</u>, y sus correspondientes interpretaciones a la luz de nuestros pronunciamientos aplicables." (Enfasis nuestro.)[4]

Finalmente, debe mantenerse presente que una cláusula de aceleración únicamente pretende adelantar el vencimiento de una obligación contraida entre las partes contratantes. Contrario a la deuda de capital (principal), los intereses son pagos fraccionados o aplazados de una obligación

---

[3]  **"El acreedor hipotecario podrá repetir contra los bienes hipotecados para el pago de los intereses vencidos, cualquiera que sea la época en que deba verificarse el reintegro del capital; mas si hubiera un tercero interesado en dichos bienes a quien pueda perjudicar la repetición, no podrá extender la cantidad que por ella se reclama de la garantizada con arreglo a la Sec. 2562 de este título." 30 L.P.R.A. Sec. 2609.**

[4] **Juez Ponente: Hon. Jaime B. Fuster Berlingeri.**

principal; esto es, los intereses "[n]o representan una obligación única que ha sido fraccionada, sino una sucesión de prestaciones separables". Asoc. Empleados E.L.A. v. Guillén, ante, pág. 429. Es decir, el hecho de que se ponga en vigor una cláusula de aceleración, no implica que cada partida, principal e intereses, pierda sus características individuales y se conviertan en un todo, pues el vencimiento adelantado de la deuda únicamente permite reclamar el balance del principal adeudado y los intereses devengados al momento de la reclamación; ello debido al hecho de que el principal continúa siendo una cuantía total y los intereses prestaciones separadas.

No estamos ante una cláusula de acumulación o capitalización, sino ante una cláusula que únicamente provee para la aceleración del vencimiento de la deuda, y la misma debe ser interpretada como tal. Por tal razón, somos del criterio que, independientemente de que se ponga en vigor la cláusula de aceleración, y se reclame una suma total de intereses, estos no pierden su característica de ser una obligación accesoria pagadera en plazos.

A la luz de todo lo anteriormente señalado, procede rectificar lo resuelto en Altuna v. Ortiz, ante, y adoptar la interpretación de que la prescripción quinquenal, en específico, el Inciso (3) del Artículo 1866 del Código Civil, ante, incluye los intereses garantizados por hipoteca. Siendo ello así, la parte demandada peticionaria, la Compañía de Fomento Industrial de Puerto Rico únicamente tiene derecho a los intereses acumulados durante los cinco (5) años anteriores a la fecha de expropiación del inmueble hipotecado.

Por los fundamentos que preceden, procede confirmar la sentencia emitida por el Tribunal de Circuito de Apelaciones en el presente caso.

Se dictará Sentencia de conformidad.

FRANCISCO REBOLLO LOPEZ
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Sonia Campos Ledesma, Myriam
Campos Ledesma y Margarita
Campos Ledesma

    Demandantes-recurridas

       v.                CC—1999—957        CERTIORARI

La Compañía de Fomento
Industrial de Puerto Rico

    Demandada-recurrente

SENTENCIA

San Juan, Puerto Rico, a 9 de enero de 2001

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se dicta Sentencia confirmatoria de la emitida en el presente caso por el Tribunal de Circuito de Apelaciones, Circuito Regional de San Juan.

Así lo pronunció, manda el Tribunal y certifica la Subsecretaria del Tribunal Supremo. La Juez Asociada señora Naveira de Rodón concurre en el resultado sin opinión escrita. El Juez Asociado señor Fuster Berlingeri emitió Opinión disidente. El Juez Asociado señor Hernández Denton no interviene.

                                Carmen E. Cruz Rivera
                                  Subsecretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Sonia Campos Ledesma
y Otras

      Demandantes−Recurridas

         vs.                                                CC−1999−957   Certiorari

La Compañía de Fomento
Industrial de P.R.

      Demandada−Recurrente

Opinión Disidente emitida por el Juez Asociado señor FUSTER BERLINGERI.

      San Juan, Puerto Rico, a 9 de enero de 2001.

      En el caso de autos, unos deudores hipotecarios incumplieron durante quince (15) años su obligación de pagarle a la Compañía de Fomento Industrial de Puerto Rico un préstamo que habían obtenido de $400,000, con intereses del 8% anual. Durante todo ese tiempo los recurridos no pagaron el principal referido ni ninguno de los intereses de dicha obligación.

      Una mayoría del Tribunal resuelve ahora que los deudores referidos sólo tienen que pagar los $400,000 debidos más intereses sólo por cinco (5) de los quince (15) años en cuestión, ya que los intereses acumulados durante el resto del período de la deuda supuestamente estaban prescritos, en                virtud                de                lo

dispuesto por el Art. 1866 del Código Civil, 31 L.P.R.A. sec. 5296, la llamada **prescripción**

**quinquenal**. En efecto, pues, la mayoría exime a los deudores de la obligación de pagar

intereses por los primeros diez (10) años del préstamo en cuestión y los dispensa así del

pago de **$320,000** que le debían a la Compañía de Fomento Industrial de Puerto Rico.

   Por las razones que señalo a continuación, debo disentir del dictamen mayoritario.


                                                 II
   La cuestión concreta ante nos se reduce a determinar si **conforme a los hechos**

**particulares del caso de autos**, es aplicable aquí lo dispuesto en el referido Artículo 1866

del Código Civil de Puerto Rico. Este dispone que:

   **Sec. 5296.  Acciones que prescriben a los cinco años**

        Por el transcurso de cinco (5) años prescriben las acciones para exigir
   el cumplimiento de las obligaciones siguientes:

        (1)    La de pagar pensiones alimenticias.
        (2)    La de satisfacer el precio de los arriendos, sean éstos
               de fincas rústicas o de fincas urbanas.
        (3)    La de cualesquiera otros pagos que deban hacerse por años
               o en plazos más breves.

   Como puede observarse, el inciso (c) de dicho Artículo, que es el pertinente aquí,

no provee de modo expreso a cuáles deudas periódicas es específicamente aplicable la

prescripción quincenal. Ello ha dado lugar a una considerable discusión sobre el

particular entre los comentaristas del Derecho Civil. Se ha discutido si la prescripción

referida aplica a deudas de capital de pago a plazos; si aplica a los intereses

compensatorios; si se extiende también a los intereses moratorios; y otros asuntos. La

discusión referida ha provocado unas respuestas en algunos países civilistas que es

distinta a las que prevalecen en otros. Existen doctrinas mayoritarias y doctinas

minoritarias.

   De especial interés para el asunto ante nos son las posturas de prominentes

comentaristas en torno a la cuestión de si la prescripción quinquenal es específicamente

aplicable a la deuda de intereses. Así pues, don Manuel Albaladejo en su fundamental obra

Derecho Civil, Parte I, Vol. segundo, pág. 494 (1983), nos dice claramente que se ha dudado

si el Artículo referido aplica a la prescripción de intereses. Diez-Picaso, por otro lado,

ha señalado que la falta de mención de los intereses en el Artículo referido "no puede

interpretarse como una categórica exclusión **en todo caso** de los intereses respecto de la

prescripción quinquenal". La Prescripción en el Código Civil, Barcelona, pág. 184 (1964).

   Es por lo anterior que el Tribunal Supremo de España, según Reglero Campos, De la

Prescripción de las Acciones, tomo XXV, Vol. 2, Comentarios al Código Civil, Revista de

Derecho Privado, págs. 329-330 (1994), "ha mantenido **una posición poco clara** a la hora

de interpretar" el Artículo referido. Añade que **"algunas sentencias han negado la**

**aplicabilidad del Artículo [en cuestión] a los intereses, declarando que el citado precepto**

**se refiere a la prescripción de acciones determinadas en que el pago de lo principal es**

**periódico**..." Id. Puig Brutau, por su parte, ha señalado también que en cuanto a la aplicación del Artículo 1866 a los intereses, "...el Tribunal Supremo **no lo ha entendido exactamente así** y aplica la prescripción quinquenal a los intereses...compensatorios... pero no a los intereses moratorios...". Fundamentos de Derecho Civil, Tomo I, Vol. II, págs. 353-354 (1988); Caducidad, Prescripción Extintiva y Usucapion, Barcelona, pág. 152 (1996).

Este Tribunal también ha hecho referencia al problema que presenta la interpretación del Art. 1866 del Código Civil. Hemos señalado que la cuestión es **"si toda prestación periódica está necesariamente sujeta al plazo quinquenal"**, Asoc. Empleados E.L.A. v. Guillén, 116 D.P.R. 425, 428 (1985). Hemos citado con aprobación la postura del comentarista francés Troplong, quien ha explicado **"por qué la periodicidad en los pagos no activa en todo caso la prescripción quinquenal"**; y que el problema surge del **"lenguaje oscuro"** del inciso pertinente, inciso tres, del Art. 1866 referido, el cual **"no debe interpretarse literalmente"**. Id, págs. 428-429. Hemos señalado, además, que:

> "Es interesante indicar que, si bien en España hay controversia sobre la aplicación del plazo quinquenal a la obligación única repartida en prestaciones periódicas, la disputa desaparece si la obligación está garantizada con una prenda, hipoteca, anticresis u otra garantía de naturaleza real. Hay acuerdo en tal caso que la prescripción quinquenal no es aplicable."

Posteriormente, en Banco de Ponce v. Barnes y DACO, 125 D.P.R. 526, 530 (1990), reiteramos nuestro dictamen previo de que **"no toda prestación periódica está sujeta al plazo quinquenal del Art. 1866 del Código Civil"**. Reiteramos, además, nuestro criterio de que dicha prescripción no le es aplicable a deudas de capital pagaderas en plazos periódicos, pero si lo es a intereses compensatorios. Resolvimos entonces que debía extenderse también a los intereses moratorios. Id, págs. 531-532.

A la luz de todo lo anterior es claro, pues, que lo dispuesto en el inciso (3) del Art. 1866 del Código Civil de Puerto Rico no es patente de modo alguno, por lo que requiere interpretación. Es igualmente claro, además, que la prescripción quinquenal que allí se dispone no es aplicable a toda prestación periódica. Con lo anterior en mente, pasemos a examinar el asunto concreto del caso de autos.

III

Reglero Campos ha opinado que al menos en la doctrina civilista española parece existir un consenso en cuanto a que la prescripción quinquenal aplica al pago periódico de intereses. Supra. Sin embargo, ello no es necesariamente determinativo del asunto específico ante nos. Tanto Reglero Campos, como los comentaristas que éste cita en su obra referida, fundamentan su posición en la **finalidad** del Art. 1866 en cuestión. Reglero Campos cita tanto a Puig Brutau como a Diez-Picazo en cuanto al elemento determinativo de la finalidad del Art. 1866. Puig Brutau, en efecto, ha señalado que:

> "Su finalidad está en evitar que una prolongada acumulación de prestaciones **de poca cuantía** pueda convertir al obligado en deudor de una suma

elevada **que pueda exceder de sus posibilidades**." Caducidad..., obra citada antes, pág. 157.

Diez-Picaso, por otro lado, en una cita que incorporamos con aprobación en nuestra opinión en Banco de Ponce v. Barnes y DACO, supra, a la pág. 532, explica aun con mayor claridad lo relativo a la determinante finalidad del Art. 1866. Conforme al criterio del eminente comentarista español referido, al decidir si procede aplicarse la prescripción quinquenal a alguna deuda, es indispensable tener en cuenta que se trata, como Diez Picaso la califica, de una **prescripción privilegiada**, que sólo tiene el propósito **"de proteger a los pequeños deudores"**. Su finalidad concreta es la de evitar que tales pequeños deudores sean conducidos **a la ruina** por acreedores que **intencionalmente** dejan de reclamarle al deudor unas pequeñas sumas pendientes de pago periódico, para luego reclamar un total acumulado que el pequeño deudor no puede pagar.

A la luz de lo anterior, debemos examinar si la prescripción quinquenal es aplicable a la **novel situación** ante nos. No tenemos en el caso de autos una situación ordinaria como las que existían en Asoc. Empleados E.L.A. v. Guillén, supra, y en Banco de Ponce v. Barnes y DACO, supra, en las cuales estaban involucradas entidades que extienden préstamos convencionales a sus socios y clientes corrientemente. Aquí, más bien, se trata de un cuantioso préstamo, extendido a los deudores por una instrumentalidad gubernamental que no se dedica primordialmente al negocio de prestar dinero[5], realizado sin que se haya pactado o identificado fin o propósito público alguno, y que no tiene término de vencimiento. Se trata, en otras palabras, de un préstamo *sui generis*, muy inusitado, y claramente distinguible de los préstamos comunes que hacen los bancos y las instituciones financieras a sus clientes.

A poco que se analice el asunto, surge evidente que no tenemos ante nos las circunstancias que justifiquen aplicar aquí la prescripción privilegiada quinquenal del Art. 1866 del Código Civil. No tenemos aquí a un pequeño deudor que ha de ser conducido a la ruina por un acreedor que deliberadamente dejó de reclamarle unas pequeñas sumas pendientes de pago para luego exigirle un total acumulado que excede las posibilidades del deudor. Sencillamente, no existen en el caso de autos las condiciones que justifiquen el *favor debitoris*.

Más aun, el caso de autos trata de un préstamo de **fondos públicos**, que es un elemento radical a tomarse en cuenta, y que saca a este tipo de préstamo de la discusión que la prescripción quinquenal ha provocado en la doctrina civilista.

En Puerto Rico prevalece una política pública de origen constitucional que preconiza el uso escrupuloso de los fondos públicos. Reiteradamente hemos enfatizado que el manejo prudente de los dineros del pueblo está saturado de intereses de orden público. Hemos resaltado normativamente la imperiosa necesidad de evitar el dispendio, la extravagancia, el favoritismo y la prevaricación de los fondos públicos. Ello, a tal extremo, que hemos invalidado incluso disposiciones contractuales donde el Estado era parte, porque involucraban un desembolso de fondos públicos que se comprometieron sin la cautela y circunspección que era procedente. De Jesús González v. Autoridad de Carreteras, opinión del Tribunal de 30 de abril de 1999, 148 D.P.R. ___, 99 TSPR 66, 99 JTS 72.

A la luz de la política pública aludida, no debe este Tribunal interpretar el Art. 1866 del Código Civil para extender al caso de autos la prescripción quinquenal, no sólo porque no se justifica aquí el *favor debitoris* según lo señalado antes, sino también porque ello conduciría a **disipar** una suma importante de fondos públicos y a crear un ominoso precedente sobre el particular para casos futuros. La "generosa" extensión de la

---

[5] La Compañía de Fomento Industrial se creó como una instrumentalidad de gobierno con el propósito primordial de propiciar la industrialización de Puerto Rico. 23 L.P.R.A. págs. 273-274. El préstamo en cuestión aquí no

prescripción quinquenal al singular préstamo que aquí nos concierne es gravemente inconsistente con nuestra responsabilidad constitucional de velar por que los fondos públicos sólo se gasten para fines públicos legítimos.

En resumen, pues, en el caso de autos nos toca interpretar una disposición general del Código Civil que carece de contenido específico. A la luz de los hechos particulares del caso de autos, nos toca darle concreción a la disposición referida y decidir si aplica aquí. <u>Se trata de una decisión que cae claramente dentro del ámbito de nuestra discreción</u>. Nos corresponde realizar lo que Castán ha denominado una "elaboración reconstructiva del Derecho" Castán Tobeñas, <u>La Formulación Judicial del Derecho</u> (1954) págs. 22-27.

En esta tarea, el norte que nos debe guiar es la conocida finalidad de la disposición en cuestión, así como las consideraciones de orden público que sean pertinentes. Una y otras conducen inexorablemente a no extender al caso de autos la prescripción quinquenal. Resolver de otro modo, como hace la mayoría, constituye realmente un uso desatinado de nuestra discreción. Representa hacerle una injustificada concesión a una parte que no cumplió de modo alguno por quince años la seria obligación que tenía de pagar intereses a una instrumentalidad del Estado. No debe olvidarse que el deudor infractor en este caso no pagó ni siquiera el primer mes de intereses. No merece tan craso incumplidor nuestro favor judicial. No hay nada en Derecho que nos obligue a ello y mucho que aconseja ejercer nuestra discreción de otro modo.

IV

Otro aspecto del caso de autos amerita consideración. Es menester preguntarse si cabe aquí la distinción que hace la mayoría en su opinión al separar la deuda de los intereses de los primeros diez (10) años del préstamo, de la deuda de los intereses de los últimos cinco (5) años de dicho préstamo. Es decir, cabe preguntarse si no debe estimarse que al momento en que Fomento reclamó el pago del principal y de todos los intereses acumulados desde que se concedió el préstamo aludido, **lo que existía entonces era una deuda unitaria o una deuda de capital única**, consistente de la suma del principal ($400,000) más el total de los intereses acumulados durante quince (15) años ($480,000), o sea una deuda singular de $880,000. En otras palabras, cabe cuestionarse, si en ese momento todavía existía una deuda de intereses desglosable por anualidades.

La interrogante anterior surge debido a que el pagaré suscrito por los deudores en este caso contenía una **cláusula relativa al incumplimiento del contrato, que tornaba en vencida y exigible la totalidad del principal y de los intereses pendientes de pago del préstamo tan pronto se incumpliese con la obligación de pagar éstos**. En virtud de la referida cláusula, al no pagarse los intereses cuando se debían, dichos intereses vinieron

---

indica de modo alguno que se hizo para tal propósito o para fomentar la economía del país.

a formar parte de una nueva deuda global, de una **"totalidad"**, compuesta del principal

adeudado y de los intereses devengados pero no pagados.

Claramente se establece en dicho pagaré que:

"el incumplimiento de cualquier condición, pacto o estipulación consignada en este Pagaré . . .constituirá por sí sola causa justificada y suficiente para que Fomento... considere el mismo **inmediatamente vencido y exigible** y proceda... al cobro de la **totalidad del principal de dicho Pagaré, más los intereses devengados** desde la fecha de emisión del mismo y hasta la de su total y completo pago...".

Nótese que la disposición contractual referida **no es** la tradicional cláusula de aceleración

del pago de la deuda que aparece con frecuencia en los préstamos hipotecarios.  En el

contrato del caso de autos, según hemos indicado antes, **no había fecha de vencimiento**.

Por tanto, no había fecha de pago que acelerar.  Por ello, el efecto principal de la cláusula

contractual referida era el **hacer vencido y exigible el pago de todo lo debido** en caso

de incumplimiento.  Muy bien podría interpretarse, pues, que por voluntad de las partes,

el incumplimiento con el pago de los intereses adeudados hacía vencida y exigible una nueva

deuda—la **"totalidad"** no pagada—consistente de una deuda única que sumaba tanto el principal

como los intereses debidos.

Esta interpretación sería muy pertinente al asunto ante nos, por razón de una norma que hemos pautado antes. En Asoc. de Empleados v. Guillén, supra, a la pág. 432, resolvimos que no surte efectos la prescripción quinquenal en casos de plazos anuales que advienen parte de la deuda principal. Señalamos que **"al convertirse en exigible la totalidad de la deuda,** ... la obligación queda naturalmente sujeta a la **prescripción ordinaria"**. De modo palmario enfatizamos que:

> **"Está establecido que si aun las deudas periódicas clásicas, sometidas a la prescripción quinquenal se transforman en deudas de capital, el plazo prescriptivo aplicable es entonces el ordinario."**

En esa opinión el problema era si los pagos a plazos, **tanto de principal como de intereses**, estaban sujetos a la prescripción quinquenal. Resolvimos que como norma general el principal no lo estaba pero los intereses sí. Sin embargo, hicimos claro que en virtud la Ley que autorizaba los préstamos emitidos por la Asociación de Empleados[6], en el caso de la separación del empleado de su puesto, **la deuda existente en ese momento perdía su periodicidad y quedaba todo el balance sujeto a cobro**. El balance en cuestión, según la Ley referida, era el pago de "cualquier suma que tengan pendiente de pago en la Asociación", fuese ésta de principal o de intereses no pagados del préstamo. Fue en este contexto que indicamos que la obligación que existiese—fuese de principal o de intereses—**"al convertirse en exigible la totalidad de la deuda"** –quedaba sujeta a la prescripción ordinaria y no a la quinquenal. Esta postura nuestra fue clara, si se lee correctamente lo que resolvimos sobre el particular en Asoc. Empleados E.L.A. v. Guillén, supra.

Con arreglo, pues, a lo resuelto antes por este Foro, en Asoc. Empleados E.L.A. v. Guillén, supra, el término prescriptivo aplicable a este caso parecería ser el de quince (15) años que provee el Art. 1864 del Código Civil, 31 L.P.R.A. sec. 5294, y no el quinquenal de cinco (5) años, aplicado aquí erróneamente por la mayoría del Tribunal. Es decir, en este caso cabe estimarse que la deuda de **todos** los intereses devengados pero no pagados se había transformado en una deuda de capital, en virtud de la cláusula contractual referida sobre el incumplimiento de la obligación de pagarlos, por lo que sería aplicable el plazo prescriptivo ordinario y no el quinquenal.

**V**

Por todas las razones anteriores, **disiento** del errado dictamen mayoritario.

JAIME B. FUSTER BERLINGERI
JUEZ ASOCIADO

---

[6] Ley Número 133 de 28 de junio de 1966.