El Juez Asociado Señor Estrella Martínez
emitió la opinión del Tribunal.
Hoy tenemos la oportunidad de examinar nuestra ñor- *369 mativa sobre la interrupción del término prescriptivo en situaciones en las que concurren múltiples causantes de un daño extracontractual. Para ello, debemos determinar si procede distinguir entre los efectos de la solidaridad pac-tada o de vínculo prexistente y los de la solidaridad que surge cuando son varios los causantes de un daño extracontractual.
I
El 2 de mayo de 2002 los familiares de la Sra. Hilda Pérez presentaron una demanda de daños y perjuicios contra el Hospital Auxilio Mutuo y el Dr. Manuel Anguita.(1) En la demanda también se incluyeron a John Doe y a Richard Roe como demandados desconocidos. Se alegó que eran solidariamente responsables en la eventualidad de que se determinara que incurrieron en negligencia. (2) Pos-teriormente, la demanda fue enmendada para incluir cier-tas alegaciones.
En conjunto, los demandantes adujeron que el 14 de enero de 2000 el Dr. Manuel Anguita operó a la señora Pérez y encontró que el intestino de ella estaba obstruido. Luego de la operación, el personal dél hospital le colocó un tubo nasogástrico a la paciente de sesenta años de edad. *370 Una enfermera procedió a realizarle un estudio llamado Turner y le inyectó un líquido a través del referido tubo sin presuntamente cerciorarse si éste se encontraba en el estómago. Los demandantes alegaron que en ese momento la señora Pérez comenzó a gritar.
Posteriormente desarrolló un cuadro de dificultad respi-ratoria y hubo que entubarla. Meses después, el 1 de julio de 2000, la paciente murió. Con acopio de todas estas ale-gaciones, los demandantes señalaron que la señora Pérez falleció debido a las actuaciones negligentes del Hospital Auxilio Mutuo y de su personal, al haber fallado en brin-darle un tratamiento médico adecuado.(3)
Seis años después de iniciado el pleito, los demandantes realizaron una solicitud para enmendar la demanda para incluir a otros presuntos cocausantes del daño. Específica-mente, solicitaron traer al pleito al Dr. Noel Totti y al Dr. Octavio Mestre.(4) Luego de que el Tribunal de Primera Instancia concediera la enmienda solicitada, el 21 de mayo de 2008 los demandantes enmendaron la demanda. Fue entonces cuando el doctor Mestre Morera y el doctor Totti se enteraron que tanto ellos como sus respectivas Socieda-des Legales de Gananciales eran codemandados en un liti-gio entablado hacía más de media década. Los galenos, se-gún alegaron los demandantes, colocaron el tubo nasogástrico a la señora Pérez de modo negligente.
El doctor Mestre Morera presentó su contestación a la demanda enmendada. Más adelante, y al corriente del liti- *371 gio, el médico interpuso una moción de sentencia sumaria. En ella argumentó que la reclamación estaba prescrita porque la parte demandante conocía de antemano su iden-tidad y su participación en el evento.(5) Así, el doctor acen-tuó que aunque la parte demandante estaba en posición de ejercer su reclamo, no fue sino hasta seis años después de interpuesta la demanda original que presentaron la acción en su contra. Aseguró que esa tardanza constituía una falta crasa de diligencia de la parte demandante en ejerci-tar su causa de acción, por lo que la reclamación en su contra debía ser desestimada.
Los demandantes presentaron su oposición a la moción de sentencia sumaria del doctor Mestre Morera. No justi-ficaron la dilación para reclamarle luego de seis años, pero señalaron que aunque su participación fue menor que la de los otros galenos, desde el momento cuando presentaron la demanda original se interrumpió el término prescriptivo contra cualquier médico que fuera negligente en el trata-miento brindado a la señora Pérez.(6)
Evaluadas las posturas de las partes, el Tribunal de Pri-mera Instancia emitió una resolución en la que declaró “no ha lugar” la moción de sentencia sumaria. Inconforme con *372 ese dictamen, el doctor Mestre Morera presentó un recurso de certiorari ante el Tribunal de Apelaciones. Posterior-mente, el foro apelativo intermedio emitió una resolución en la que denegó expedir el recurso. Fundamentó su determinación en la norma recogida en Arroyo v. Hospital La Concepción, 130 D.P.R. 596 (1992).
Nuevamente inconforme, el doctor Mestre Morera recu-rrió ante nos por medio de un recurso de certiorari. En lo pertinente, señaló que el Tribunal de Apelaciones incidió al concluir que la reclamación presentada seis años después de la demanda original no estaba prescrita. Argüyó que, de acuerdo con la teoría cognoscitiva del daño, el término para entablar la reclamación había expirado, pues los deman-dantes conocían de antemano su identidad y el resto de los elementos necesarios para poder ejercitar su causa de acción. El médico cuestionó que, mediante un mero forma-lismo procesal sin trámite ulterior, la parte demandante quedara relevada de su deber de actuar de modo diligente y oportuno en el reclamo de sus derechos.
Inevitablemente nos convoca a revocar la norma pau-tada en Arroyo v. Hospital La Concepción, supra, sobre la interrupción automática e indefinida del término prescrip-tivo contra los presuntos cocausantes solidarios de un daño que no fueron incluidos en la demanda original. En su lu-gar, propone que adoptemos la doctrina de la obligación in solidum.
El 16 de abril de 2010 concedimos un término a los de-mandantes para que mostraran causa por la cual no debía-mos expedir el auto de certiorari y revocar la determina-ción del Tribunal de Apelaciones. Han comparecido. Con el beneficio de las diferentes posturas, procedemos a resolver.
II
A. La prescripción es una institución que ex-tingue un derecho por la inercia de una parte en ejercerlo *373 durante un periodo de tiempo determinado. Reiterada-mente hemos explicado que la prescripción extintiva es una figura de naturaleza sustantiva y no procesal, la cual se rige por los principios de nuestro Código Civil. S.L.G. Serrano-Báez v. Foot Locker, 182 D.RR. 824 (2011); COSSEC et al. v. González López et al., 179 D.P.R. 793, 805 (2010); Santos de García v. Banco Popular, 172 D.P.R. 759, 766 (2007). Esta aplica como cuestión de derecho con el transcurso del tiempo, a menos que ocurra alguno de los supuestos previstos en nuestro ordenamiento jurídico. COSSEC et al. v. González López et al., supra, págs. 805-806; Santos de García v. Banco Popular, supra, pág. 766. A esos efectos, el Art. 1873 del Código Civil, 31 L.P.R.A. sec. 5303, establece que “[l]a prescripción de las acciones se interrumpe por su ejercicio ante los tribunales, por recla-mación extrajudicial del acreedor y por cualquier acto de reconocimiento de la deuda por el deudor”. (7)
Los términos prescriptivos buscan castigar la inercia y estimular el ejercicio rápido de las acciones. COSSEC et al. v. González López et al., supra, pág. 806; Campos v. Cía. Fom. Ind., 153 D.P.R. 137, 143 (2001). Su objetivo es promover la seguridad en el tráfico jurídico y la estabilidad de las relaciones jurídicas. íd. Hemos señalado que la existencia de los términos prescriptivos responde a una política firmemente establecida para la solución expedita de las reclamaciones. Campos v. Cía. Fom. Ind., supra, pág. 143. De esta forma se evitan las sorpresas que genera la resucitación de reclamaciones viejas, además de las consecuencias inevitables del transcurso del tiempo, tales como pérdida de evidencia, memoria imprecisa y dificultad para encontrar testigos. íd., pág. 144. Esta figura está basada en “la experiencia humana de que las reclamaciones válidas se accionan inmediatamente y no se abandonan”. *374 Culebra Enterprises Corp. v. E.L.A., 127 D.P.R. 943, 950 (1991). Al respecto, transcurrido el periodo de tiempo esta-blecido por ley sin reclamo alguno por parte del titular del derecho, se origina una presunción legal de abandono. Véase Zambrana Maldonado v. E.L.A., 129 D.P.R. 740, 752 (1992).
Como bien es sabido, las obligaciones que nacen de la culpa o de la negligencia se rigen por lo dispuesto en el Art. 1802 del Código Civil, 31 L.P.R.A. sec. 5141, el cual establece que quien “por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado”. El término prescriptivo de estas acciones es de un año, según lo dispuesto por el Art. 1868 del Código Civil, 31 L.P.R.A. sec. 5298. La brevedad de este plazo responde a la inexistencia de una relación jurídica previa entre el demandante y el demandado. Culebra Enterprises Corp. v. E.L.A., supra, págs. 951 — 952. En particular, el mencionado término prescriptivo busca fomentar el establecimiento oportuno de las acciones, en aras de asegurar que el transcurso del tiempo no confundirá ni borrará el esclarecimiento de la verdad en sus dimensiones de responsabilidad y evaluación de la cuantía. Campos v. Cía. Fom. Ind., supra, pág. 143; Culebra Enterprises Corp. v. E.L.A., supra, pág. 950.
De acuerdo con la teoría cognoscitiva del daño, este término prescriptivo comienza a transcurrir cuando el reclamante conoció o debió conocer que sufrió un daño, quién se lo causó y los elementos necesarios para poder ejercitar efectivamente su causa de acción. Véanse: COSSEC et al. v. González López et al., supra; Toledo Maldonado v. Cartagena Ortiz, 132 D.PR. 249, 254-255 (1992); Colón Prieto v. Géigel, 115 D.P.R. 232, 247 (1984). Empero, hemos expresado reiteradamente que “si el desconocimiento se debe a falta de diligencia, entonces no son aplicables estas consideraciones sobre la prescripción”. COSSEC et al. v. González López et al., supra, pág. 806.
*375 B. Las obligaciones pueden ser clasificadas de acuerdo con los sujetos que componen la relación. Así, existen obligaciones mancomunadas y solidarias. En las obligaciones mancomunadas, la deuda puede ser dividida y cada deudor ha de cumplir con su parte de forma independiente. J. Castán Tobeñas, Derecho civil español, común y foral, 10ma ed., Madrid, Ed. Reus, 1967, T. III, pág. 107. En las obligaciones solidarias, cada acreedor tiene derecho a pedir y cada deudor tiene el deber de realizar íntegramente la prestación debida. Id.
La regla que impera en materia de derecho civil es que la solidaridad no se presume. El Art. 1090 del Código Civil, 31 L.P.R.A. sec. 3101, establece que la concurrencia de dos o más deudores en tona sola obligación no implica que cada uno de éstos deba prestar íntegramente las cosas objeto de dicha obligación. Este artículo establece la mancomunidad como la regla y la solidaridad como la excepción, y surge esta última solo cuando la obligación expresamente lo determine.
En materia de responsabilidad extracontractual, en Cruz et al. v. Frau, 31 D.P.R. 92, 100 (1922), establecimos que cuando se ocasiona un daño por la negligencia concurrente de varias personas, el descuido de éstas es la causa próxima del accidente y todas son responsables de reparar el mal causado. Luego, en Cubano v. Jiménez et al., 32 D.P.R. 167, 170 (1923), este Tribunal expresó que “la tendencia de la jurisprudencia ha sido declarar in solidum la responsabilidad de los varios demandados”.
No obstante nuestras expresiones anteriores, ante la in-terrogante de la existencia del derecho a contribución en nuestro ordenamiento jurídico, en García v. Gobierno de la Capital, 72 D.P.R. 138, 148-149 (1951), extendimos juris-prudencialmente la aplicación de los Arts. 1094, 1098 y 1874 del Código Civil, 31 L.P.R.A. secs. 3105, 3109, 5304, referentes a los efectos de la solidaridad, a los casos de daños y perjuicios. Como paso previo a dicha conclusión, *376 expresamos, tal vez por el borde exterior de la claridad, que quienes ocasionan un daño son responsables solidaria-mente ante el agraviado por la sentencia que en su día le resulte favorable a este último. García v. Gobierno de la Capital, supra, págs. 146-147.
Más adelante tuvimos ocasión para aclarar nuestros pronunciamientos sobre la doctrina de solidaridad. En Arroyo v. Hospital La Concepción, supra, pág. 605, reiteramos que “lo dispuesto en el Art. 1090 del Código Civil, 31 L.P.R.A. sec. 3101, respecto a la no presunción de la solidaridad, no aplica en materia de responsabilidad extracontractual”. (Énfasis suplido). Pero más importante aún, movidos principalmente por la doctrina española de aquel entonces —1992—, en ese caso preferimos no hacer distinción entre los distintos tipos de solidaridad —perfecta e imperfecta— y sostuvimos jurisprudencialmente que la solidaridad en nuestro ordenamiento tenía un carácter homogéneo, por lo que le aplicaban tanto los efectos primarios como los secundarios. En consecuencia, resolvimos que la presentación a tiempo de una demanda por parte de un perjudicado contra un coautor solidario interrumpe automáticamente el término prescriptivo contra todos los demás cocausantes del daño. Señalamos que con una enmienda a la demanda o una demanda contra tercero se puede incorporar en el pleito a los alegados cocausantes solidarios del daño no incluidos originalmente, y que el reclamante solo debe alegar bien y suficientemente que el nuevo demandado responde solidariamente por los daños. Con ello, en ese caso permitimos que se trajera al pleito a varios codemandados cuatro años después de presentada la demanda inicial.
Posteriormente, resolvimos García Pérez v. Corp. Serv. Mujer, 174 D.P.R. 138, 155 (2008), el cual tuvo la singula-ridad de que la demandante conocía de antemano la iden-tidad y los elementos necesarios para poder ejercitar su causa de acción contra una presunta coautora solidaria, *377 pero no la incluyó en la demanda original.(8) No fue hasta tres años más tarde que la perjudicada enmendó la de-manda para incluirla como cocausante solidaria del daño.(9) En esa ocasión reiteramos la norma de Arroyo v. Hospital La Concepción, supra, y decidimos que como en la demanda enmendada se alegó que la nueva codemandada respondía solidariamente por todos los daños causados, el término prescriptivo quedó interrumpido con la presenta-ción inicial de la demanda. Id., pág. 159.
Según mencionamos, en Arroyo v. Hospital La Concepción, supra, acogimos la interpretación de la doctrina y de la jurisprudencia española vigentes en esa época. El tiempo ha discurrido y no han sido pocos los cambios acae-cidos desde entonces. La interpretación admitida en el alu-dido caso fue abandonada en España desde hace ya varios años y,, en su lugar, se acogió la doctrina francesa que dis-tingue entre dos tipos de solidaridad: perfecta e imperfecta.
III
Nos corresponde resolver si debe mantenerse vigente la normativa establecida sobre prescripción en acciones de daños y perjuicios; en particular, si la interposición de una demanda por responsabilidad civil extracontractual contra un alegado cocausante solidario interrumpe el término prescriptivo contra el resto de los presuntos cocausantes. Para ello, analizamos si debemos integrar una distinción entre los casos de solidaridad pactada o de vínculo prexis-tente —conocido como solidaridad propia o solidaridad perfecta— y los casos de solidaridad cuando son varios los responsables de un daño extracontractual —conocida como solidaridad impropia o solidaridad imperfecta — . De admi- *378 tirse esta distinción, el efecto interruptor del Art. 1874 del Código Civil, 31 L.P.R.A. sec. 5304, aplicaría a los casos de solidaridad propia, pero no se extendería al ámbito de la responsabilidad civil extracontractual cuando son varios los cocausantes condenados judicialmente.(10)
El estudio ponderado de las obligaciones derivadas de la responsabilidad por daños extracontractuales requiere un examen histórico de su naturaleza y extensión.
A. La palabra “solidaridad” proviene del latín in solidum, la cual se define como la totalidad de una suma. A. Blánquez Fraile, Diccionario latino-español, español-latino, Barcelona, Ed. Ramón Sopeña, 1985, T. II, pág. 1460. La institución de la obligación in solidum proviene, a su vez, del Derecho romano. Este reconoció en toda su ex-tensión la división entre las obligaciones mancomunadas y solidarias, según se diera o no la distribución de la responsabilidad entre las partes. J.R. León Alonso, La categoría de la obligación “in solidum”, Sevilla, Pubs, de la Universidad de Sevilla, 1978, pág. 51. Las obligaciones con pluralidad de sujetos eran consideradas solidarias siempre que no existiera un pacto entre las partes. C. Gómez Ligüerre, Solidaridad y derecho de daños: los límites de la responsabilidad colectiva, [s.l.], Thomson, Civitas, 2007, pág. 79. La solidaridad romana permitía que el acreedor pudiera exigir el cumplimiento íntegro de la obligación a cualquiera de los deudores.
Desde el 286 a. C., a través de la Ley Aquilia, los roma-nos proveyeron un régimen para las situaciones en las que concurrían varios causantes de un daño. Gómez Ligüerre, op. cit. pág. 81. Conforme a éste, la víctima podía reclamar la totalidad de la indemnización a cualquiera de los decla-rados responsables. Id.
*379 Las obligaciones en el Derecho romano se presumían solidarias. La mancomunidad era la excepción, y se apli-caba cuando era convenida entre las partes o cuando la obligación era divisible. Posteriormente, este razona-miento fue invertido por el Derecho de Justiniano (527-565 d. C.), el cual cambió la presunción: impuso la división de la obligación como la regla y estableció la solidaridad solo cuando era pactada. Gómez Ligüerre, op. cit., pág. 80. Era un requisito ineludible que la reclamación fuera diri-gida contra todos los deudores a la vez. Id., pág. 81.
Desde su concepción la solidaridad ha sido dividida de acuerdo con la fuente de la cual emana. El Derecho romano propuso la idea de distinguir entre dos clases de obligacio-nes plurales: las obligaciones correales y las in solidum. Véase E. Petit, Tratado elemental de Derecho Romano (J. Ferrández González, trad.), México, Editora Nacional, 1966, págs. 348-355. Aunque similares en apariencia, am-bas obligaciones se diferenciaban en su fuente u origen. J. Cubides Camacho, Obligaciones, 5ta ed., Bogotá, Ed. Pon-tificia Universidad Javeriana, 2007, pág. 68. Las obligacio-nes in solidum provenían de causas naturales —como las derivadas de la falta o del delito común de los deudores— y las obligaciones correales procedían de causas voluntarias. Petit, op. cit., págs. 353-354. De igual forma, las obligacio-nes in solidum solo podían existir entre deudores, mien-tras que las correales podían establecerse tanto entre deu-dores como entre acreedores. íd.
La regla de la no presunción de la solidaridad del Dere-cho romano tuvo significativa influencia en la creación de los códigos civiles de Francia y España. Empero, estos có-digos no establecen expresamente cómo responderán los cocausantes de un daño extracontractual, por lo que ambos países han suplido esta ausencia mediante la juris-prudencia. En este aspecto, nuestro Código Civil es similar al de Francia y España.
*380 B. En Francia, el Art. 1.202 de su Código Civil dispone que la solidaridad no se presume, sino que deberá ser ex-presamente pactada. Como dijimos, el referido código guarda silencio acerca de la obligación que debe existir en casos de pluralidad de causantes de un daño.
En materia de responsabilidad general, la doctrina francesa distingue entre dos tipos de efectos de la solidari-dad: los efectos primarios y los efectos secundarios. Los primarios incluyen la anidad de la deuda y la pluralidad de vínculos. Los secundarios son la interrupción de la pres-cripción, la interrupción de la mora y la promesa de cum-plimiento de todos los deudores solidarios. Gómez Ligüerre, op. cit., pág. 127. Esta distinción es crucial en esa doctrina, ya que los efectos secundarios de la solidaridad no aplican al ámbito de responsabilidad extracontractual.
Debido a que la solidaridad puede nacer de la ley o de la voluntad de las partes, en Francia se hace una distinción entre los casos de solidaridad perfecta y aquellos en los cuales la solidaridad es imperfecta. La solidaridad es con-siderada perfecta cuando es “entre varias personas unidas por un interés común, que tienen entre sí relaciones fre-cuentes o se conocen”. León Alonso, op. cit., pág. 32. En cambio, es imperfecta cuando es establecida mediante ley “entre personas que no se conocen, que no son sino codeu-dores accidentales o cuando sus relaciones son esporádicas”. Íd., págs. 32-33.
Cuando la solidaridad es imperfecta, surge urna obliga-ción in solidum .(11) De acuerdo con ésta, en los casos de pluralidad de causantes, cada uno de ellos responde por entero, pero su responsabilidad es autónoma. A. Cristóbal Montes, Mancomunidad o solidaridad en la responsabili-dad plural por acto ilícito civil, Barcelona, Ed. Bosch, 1985, pág. 36. Ello, debido a que el vínculo del cual deriva *381 la obligación de cada cocausante es independiente. íd. Por esto, la doctrina francesa no considera tal obligación como una obligación solidaria regular, sino como in solidum. Aunque cada uno de los cocausantes tiene la responsabili-dad de pagar el todo, los efectos secundarios de la solidari-dad tradicional —entre éstos, la interrupción del término prescriptivo— no rigen. Esto significa que en las acciones de daños extracontractuales el damnificado debe interrum-pir individualmente el término prescriptivo respecto a cada cocausante solidario. Id., pág. 38. Es decir, la opor-tuna interposición de una demanda contra un cocausante solidario de un daño extracontractual no interrumpe el tér-mino contra el resto de los alegados autores.
En lo referente a la interrupción de la prescripción, el Art. 1.206 del Código Civil francés —similar al Art. 1874 de nuestro Código Civil, supra— establece que “[l]as accio-nes ejercidas contra uno de los deudores solidarios inte-rrumpe la prescripción con respecto a todos ellos”. Código Civil francés (Á. Núñez Iglesias, trad.), Madrid, Ed. Marcial Pons, 2005, pág. 552. Añora bien, la doctrina francesa no aplica este artículo al ámbito extracontractual. Esto se debe principalmente a que en Francia se explica la solida-ridad clásica como una idea de representación mutua, que exige que todos estén animados por una voluntad común. Véase Gómez Ligüerre, op. cit., pág. 99. Ello no ocurre en los casos de responsabilidad in solidum. En éstos, como no existe una representación mutua debido a la ausencia de voluntad de los copartícipes a obligarse conjuntamente, la obligación que surge entre los cocausantes de un daño no es considerada equiparable en toda su extensión a una obligación solidaria propia.
La exclusión de los efectos secundarios de la solidaridad de varios causantes de un daño extracontractual se justi-fica por la ausencia de una comunidad de intereses entre los coobligados. J. López Richart, Responsabilidad personal e individualizada, Madrid, Ed. Dikinson, 2003, pág. *382 40. No existe interés común ni mutua representación por-que la obligación in solidum no surge de un acuerdo o pacto previo, sino de un evento no convencional. I. Sierra Gil de la Cuesta, Tratado de responsabilidad civil, España, Ed. Bosch, 2008, T. II, pág. 669.
En suma, en el ámbito extracontractual, la doctrina francesa considera que cuando coexisten varios causantes de un daño extracontractual surge una obligación in soli-dum en la cual no se producen los efectos secundarios de la solidaridad. Para que la parte lesionada pueda conservar su acción contra los alegados cocausantes, debe interrum-pir la prescripción contra cada uno de ellos. Cristóbal Mon-tes, op. cit., pág. 38.
C. El Código Civil de España sigue el modelo del Có-digo Civil francés y no dispone de forma expresa el su-puesto obligacional que rige en casos de responsabilidad extracontractual de varios causantes de un daño. Cristóbal Montes, op. cit., pág. 29. El Art. 1.902 del Código Civil es-pañol —similar al Art. 1802 de nuestro Código Civil, supra— recoge la figura de la culpa extracontractual. Por su parte, el Art. 1.137 del Código Civil de España establece que la solidaridad no se presumed(12) Sin embargo, por in-terpretación judicial, los cocausantes de un daño extracon-tractual responden solidariamente.
Para la época en que resolvimos Arroyo v. Hospital La Concepción, supra, la norma vigente en España establecía una solidaridad homogénea, que aceptaba que la presenta-ción oportuna de una demanda por parte de un agraviado contra un coautor solidario de daños y perjuicios, inte- *383 rrumpiera el término prescriptivo contra los que posterior-mente fueran encontrados solidariamente responsables. Esto, pues no había distinción entre la solidaridad nacida del pacto y la solidaridad producto del daño ocasionado por varios autores. Según mencionamos, esta normativa fue abandonada en España. En su lugar, se incorporó la inter-pretación francesa dominante, que admite una distinción entre la solidaridad propia y la impropia. De acuerdo con la norma moderna en España, la solidaridad es propia cuando su carácter se deriva de una norma legal o de un pacto convencional, y es impropia cuando nace de la sentencia. Véase S. 7 de jimio de 2010, Núm. 521/2010.
La figura de la solidaridad impropia presentó “la solu-ción a uno de los problemas que plantea la responsabilidad solidaria: la interrupción de la prescripción”. Gómez Ligüe-rre, op. cit., pág. 129. Ello debido a que la solidaridad im-propia es una excepción a la norma de interrupción de la prescripción. La figura española es muy similar a la conso-lidada doctrina francesa in solidum, vigente desde el siglo XIX. Gómez Ligüerre, op. cit., pág. 125. Fue específica-mente en la Sentencia de 14 de marzo de 2008, S. de 14 de marzo de 2003, Núm. 3645/2003, que la jurisprudencia es-pañola integró la aludida distinción. Los hechos de esa sen-tencia son los siguientes. Un obrero demandó por daños y perjuicios a la empresa para la cual trabajaba, a la entidad promotora de la obra y al arquitecto director. Una senten-cia absolvió al último y, en el acto, condenó a los dos pri-meros a indemnizar al peijudicado. Este no pudo percibir la compensación debido a la insolvencia de los demandados y procedió a demandar al arquitecto técnico y a sus compa-ñías aseguradoras. Los tribunales inferiores determinaron que la acción estaba prescrita porque el Art. 1.974 del Código Civil español no aplicaba a esa causa de acción extracontractual. El Tribunal Supremo de España con-firmó el dictamen luego de consultar a la Junta General de *384 los Magistrados de la Sala Primera del Tribunal Supremo, la cual adoptó, por amplia mayoría de votos, el acuerdo siguiente:
El párrafo primero del artículo 1.974 del Código Civil única-mente contempla efecto interruptivo en el supuesto de las obli-gaciones solidarias en sentido propio cuando tal carácter de-riva de norma legal o pacto convencional, sin que pueda extenderse al ámbito de responsabilidad extracontractual cuando son varios los condenados judicialmente. (Énfasis nuestro). S. de 14 de marzo de 2003, Núm. 3645/2003.
Como ha de observarse, en la actualidad la jurispruden-cia española —al igual que la doctrina francesa— consi-dera que el efecto interruptor de la prescripción que esta-blece su Art. 1.974 aplica solamente a los casos de solidaridad propia. Véanse: Sentencia de 14 de marzo de 2003, Núm. 3645/2003; Sentencia de 4 de junio de 2007, Núm. 662/2007. Esto es, en el caso de España, cuando tal carácter surge del pacto o la ley. Id. No obstante, la inte-rrupción no se extiende a la solidaridad impropia debido a que ésta es inexistente hasta el momento cuando surge en virtud de una sentencia. Id. Esta solidaridad no nace de un vínculo prexistente, sino del acto ilícito productor del daño, el cual obtiene su reconocimiento por medio de la sentencia que así lo declare. Id. Por ello, los actos interruptores ope-ran individualmente. “[S]i la solidaridad no nace sino de la sentencia, que es la llamada solidaridad impropia, la inte-rrupción de la prescripción respecto a uno de los deudores no alcanza al otro, ya que no era deudor solidario y sólo lo fue desde la sentencia que así lo declaró, no antes”. S. de 4 de junio de 2007, Núm. 3645/2007; S. de 14 de marzo de 2003, Núm. 3612/2003.
Esta doctrina se consolidó en España —S. de 19 de oc-tubre de 2007, Núm. 1086/2007— y ha sido aplicada de manera uniforme desde el 2003. Véanse: S. de 18 de julio de 2011, Núm. 545/2011; S. de 19 de octubre de 2007, Núm. 1086/2007; S. de 8 de mayo de 2007, Núm. 466/2007; S. de *385 23 de octubre de 2003, Núm. 979/2003; S. de 5 de junio de 2003, Núm. 534/2003.
IV
Hemos examinado detenidamente la norma de Arroyo v. Hospital La Concepción, supra. En ese caso nos enfrenta-mos a la existencia de dos posibles interpretaciones sobre la solidaridad en nuestro ordenamiento jurídico. Una de ellas reiteraba el carácter homogéneo de la solidaridad y, en consecuencia, el reconocimiento en toda su extensión de sus efectos primarios y secundarios. La otra admitía una distinción entre la solidaridad propia y la impropia. Según esta última exégesis, los efectos primarios de la solidaridad quedarían intactos —que cada codeudor sea responsable de pagar la totalidad de la deuda — , pero no se reconoce-rían los efectos secundarios de la solidaridad —en este caso, que la interrupción del término prescriptivo contra un cocausante de un daño extracontractual interrumpiera a su vez, de forma indefinida, el término contra el resto de los cocausantes — .
Ante esa coyuntura, en Arroyo v. Hospital La Concepción, supra, nos inclinamos por la apreciación de la doc-trina española vigente en aquel entonces —y abandonada en esa jurisdicción hace casi una década— e interpretamos que de acuerdo con el Art. 1874 de nuestro Código Civil, supra, cuyo primer párrafo dispone que “[l]a interrupción de la prescripción de acciones en las obligaciones solidarias aprovecha o perjudica por igual a todos los acreedores o deudores”, la presentación oportuna de una demanda por daños y perjuicios contra un cocausante solidario inte-rrumpía el término prescriptivo contra todos los que fue-ran responsables de forma solidaria. No era la primera vez que suplíamos un vacío en la legislación sobre responsabi-lidad civil extracontractual, pues la propia responsabilidad solidaria de los cocausantes del daño no surge expresa- *386 mente de la ley, sino de una interpretación judicial de las disposiciones de nuestro Código Civil. C.J. Irizarry Yunqué, Responsabilidad Civil Extracontractual, 6ta ed., [s. 1.], ed. del autor, 2007, pág. 343. Así, en Arroyo v. Hospital La Concepción, supra, interpretamos que en nuestro ordena-miento solo había una obligación solidaria y rechazamos hacer una distinción entre la solidaridad perfecta y la im-perfecta, y admitir, a su vez, los efectos que ello implicaba en cuanto a la interrupción del término prescriptivo.
Hicimos lo anterior con el propósito de lograr un justo balance entre las fuerzas encontradas. Afirmamos en Arroyo v. Hospital La Concepción, supra, pág. 608, que la norma allí adoptada “alcanza [ba] el mejor equilibrio entre todos los intereses”. Era la enunciación de una hipótesis por comprobarse. Dos decenios más tarde, el acervo de ex-periencias nos obliga a concluir que la norma allí pautada no alcanzó el equilibrio buscado. Efectivamente, luego de Arroyo v. Hospital La Concepción, supra, reconocimos que esa norma le brinda en realidad mayor protección a la parte demandante. Véase, a manera de ejemplo, García Pérez v. Corp. Serv. Mujer, supra, pág. 151. Así lo sostienen los múltiples efectos de la normativa aplicada en la práctica.
El demandante puede traer al pleito a otra persona como codemandada aun cuando le reclame fuera del tér-mino prescriptivo. De hecho, aunque conozca de antemano la identidad del alegado cocausante solidario, no tiene que incluirlo en la demanda original. Véase García Pérez v. Corp. Serv. Mujer, supra. El perjudicado ni siquiera tiene que alegar en esa demanda la solidaridad de los cocausan-tes, ya que puede hacerlo luego mediante una enmienda a la demanda. íd. En esa enmienda solo debe alegar que el nuevo demandado responde solidariamente por los daños reclamados al demandado original, contra quien presentó la demanda dentro del término prescriptivo dispuesto por el ordenamiento jurídico. De esa forma, aunque el deman- *387 dante esté en posición de ejercitar su causa de acción contra el presunto cocausante solidario, no tiene límite alguno para así hacerlo. Esto, pues la norma de Arroyo v. Hospital La Concepción, supra, proveyó un efecto interruptor auto-mático e indefinido en perjuicio de todos los que pudieran ser solidariamente responsables del daño.
Por su parte, el alegado cocausante solidario traído al pleito luego de varios años de instada la demanda original —seis años en este caso— ha de emplear, en no pocas oca-siones, muchos esfuerzos para recordar con determinada certeza —si alguna— los eventos particulares que motiva-ron el reclamo en su contra. Debe encarar, además, la bús-queda acuciosa de documentos concebidos en ese momento histórico, asunto que se complica cuando éstos se encuen-tran en manos de terceros con los cuales se tiene poca o ninguna relación, o en manos de un tercero que ya no existe. Del mismo modo, mientras más discurra el tiempo hasta que finalmente sea incorporado como codemandado, mayor será la probabilidad de afrontar dificultades para encontrar testigos. Asimismo, el presunto cocausante soli-dario deberá incurrir en gastos asociados a un litigio que de otra forma estaría prescrito, debido a la brevedad del término en nuestro Código Civil para estas reclamaciones.
Como puede advertirse, lejos de lograr un equilibrio en-tre los intereses opuestos, esta normativa desnivela la si-tuación a favor de la parte reclamante. Como consecuencia de lo anterior, y pese al reconocimiento expreso y extenso de la figura sustantiva de la prescripción en los Arts. 1840 al 1874 de nuestro Código Civil, 31 L.P.R.A. secs. 5261-5304, la severidad que caracteriza a los términos prescriptivos disminuye considerablemente. Ello a pesar de que la exis-tencia de éstos se cimenta en la búsqueda de la estabilidad para las relaciones jurídicas y en fomentar la diligencia en la vindicación de los derechos.
Adviértase nuevamente que la normativa sobre solida-ridad en materia de responsabilidad extracontractual edi- *388 ficada en Arroyo v. Hospital La Concepción, supra, no surge expresamente de nuestro Código Civil. Cuando éste alude a “las obligaciones solidarias”, no especifica si esta-mos ante un supuesto de una sola obligación solidaria o de varias, y en ese último caso, de cuántas y cuáles en particular. Muy a pesar de tal ausencia, jurisprudencial-mente le dimos preeminencia a la norma allí adoptada so-bre la figura sustantiva de la prescripción, que sí está ex-presamente regulada en nuestro Código. El problema de la construcción de esa norma es que no alcanzó una solución que estuviera en armonía con el resto del ordenamiento jurídico. El resultado ha sido socavar la institución de la prescripción, pues una parte tiene el derecho eterno de re-clamarle a otra por daños y perjuicios. Con igual peligrosi-dad, tal normativa tiene el lamentable efecto de premiar la inercia en la vindicación de un derecho y de fomentar el uso estratégico de la inacción, dado que el demandante puede seleccionar a su arbitrio el momento que le resulte más oportuno para incluir a una parte en el litigio.
Otro problema que enfrenta la interrupción automática y el diferimiento indefinido de la causa de acción es que el término prescriptivo limitado a un año para reclamaciones al amparo del Art. 1802 del Código Civil, supra, responde principalmente a la ausencia de una relación jurídica pre-via entre el demandante y el demandado. La obligación por causar un daño extracontractual no surge del acuerdo en-tre las partes, por lo que no hay oportunidad alguna de negociar los términos de la obligación ni de consentir libre-mente, contrario a la relación contractual. De ahí el breve plazo dispuesto por el legislador. De ese modo se le otorgó un mínimo de certeza a una relación desprovista de ella. Ese mínimo de seguridad compensa de alguna forma la ausencia de conocimiento sobre el alcance de la obligación. Provee, pues, una ínfima salvaguarda que permite conser-var un justo equilibrio entre las partes. Y no debe soslayarse.
*389 Por todo lo aquí intimado, adoptamos en nuestra jurisdicción la obligación in solidum en materia de prescripción de la causa de acción por responsabilidad civil ex-tracontractual cuando coincide más de un causante. (13) Conforme a ésta, el perjudicado podrá recobrar de cada cocausante demandado la totalidad de la deuda que proceda, porque los efectos primarios de la solidaridad se mantienen. Sin embargo, deberá interrumpir la prescripción en relación con cada cocausante por separado, dentro del término de un año establecido por el Art. 1868 del Código Civil, supra, si interesa conservar su causa de acción contra cada uno de ellos. Esto no constituye una carga mayor para el peijudicado, pues solamente debe ejercer la misma diligencia requerida cuando reclama a un autor del daño. De esta forma, la presentación oportuna de una demanda contra un presunto cocausante no interrumpe el término prescriptivo contra el resto de los alegados cocausantes, porque tal efecto secundario de la solidaridad no obra en la obligación in solidum.(14) Por lo tanto, el Art. 1874 de nuestro Código Civil, supra, no aplica a los casos de daños y peijuicios al amparo del Art. 1802 del Código Civil, supra.(15)
*390 Claro está, la norma hoy adoptada también es cónsona con la teoría cognoscitiva del daño, por lo que el término prescriptivo comienza a transcurrir cuando la parte perjudicada conoció o debió conocer, si hubiera empleado algún grado de diligencia, la existencia del daño y quién lo causó, así como los elementos necesarios para poder ejercitar efectivamente su causa de acción. CSMPR v. Carlo Marrero et als., 182 D.P.R. 411, 425-426 (2011); COSSEC et al. v. González López et al., supra; Vera v. Dr. Bravo, 161 D.P.R. 308, 328 (2004); Santiago v. Ríos Alonso, 156 D.P.R. 181, 189 (2002). Por ello, si mediante el descubrimiento de prueba u otro medio el agraviado conoce de la existencia de otro coautor y del resto de los elementos necesarios para reclamarle, el término prescriptivo contra ese alegado cocausante comenzará a transcurrir en ese momento. Esto, pues un estatuto de prescripción cuyo efecto sea exigir a la parte demandante que presente una causa de acción antes de tener conocimiento de la existencia de ésta, viola el debido proceso de ley. COSSEC et al. v. González López et al., supra, págs. 821-822; Vera v. Dr. Bravo, supra, pág. 327; Vega v. J. Pérez & Cía, Inc., 135 D.P.R. 746, 754 (1994).
*391 De este modo armonizamos la normativa cuando son varios los causantes de un daño extracontractual con la teoría cognoscitiva del daño y con la figura sustantiva de la prescripción, a la vez que respetamos el mínimo de certi-dumbre concedido por el legislador para este tipo de relación. Al mismo tiempo, mediante la adopción de la so-lidaridad impropia resolvemos el problema de incertidum-bre que presenta la pendencia indefinida de la causa de acción por responsabilidad civil extracontractual. La norma aquí pautada permite mantener a raya la peligrosa frontera donde la búsqueda de reparación de un daño no encuentra exigencia alguna de diligencia, muy a pesar del mandato expreso de las disposiciones de nuestro Código Civil. La diligencia en el reclamo deviene ahora imprescindible.
Somos conscientes de que la doctrina anterior es una consolidada, pero tal circunstancia no impide armonizar nuestro ordenamiento jurídico y remediar una injusticia. Si bien la doctrina de stare decisis establece que un tribunal debe seguir sus decisiones en casos posteriores, ésta no llega al extremo de declarar que la opinión de un tribunal se convierta en un dogma que el Tribunal debe seguir ciegamente. Pueblo v. Díaz De León, 176 D.P.R. 913, 921 (2009); Am. Railroad Co. v. Comisión Industrial, 61 D.P.R. 314, 326 (1943). Es por esto que cuando el razonamiento de una decisión ya no resiste un análisis cuidadoso, no esta-mos obligados a seguirla. Arizona v. Gant, 556 U.S. 332, 348 (2009). De esta forma se permite el desarrollo consis-tente de principios legales. Pueblo v. Díaz De León, supra; Seminole Tribe of Florida v. Florida, 517 U.S. 44 (1996).
V
La demanda del caso de autos fue presentada el 2 de mayo de 2002. Fueron seis largos años en que los deman-dantes contuvieron su reclamación contra el doctor Mestre *392 Morera, a quien finalmente incorporaron en el pleito el 21 de mayo de 2008 mediante una demanda enmendada.
Las propias declaraciones de la parte demandante ma-nifiestan su conocimiento sobre la identidad y la participa-ción del doctor Mestre Morera en el acontecimiento. La co-demandante Fraguada Pérez testificó que se encontraba en la habitación de la señora Pérez atenta al procedimiento que le realizaba la enfermera. Fue entonces cuando ob-servó que la señora Pérez comenzó a toser repetidamente. Ante el imprevisto, el doctor Mestre Morera y otro médico acudieron apresurados a la habitación. La propia code-mandante urgió a los doctores que hicieran algo, mientras se mantenía firme al lado de su madre. Asimismo, presen-ció la alegada discusión entre el doctor Mestre Morera y el otro galeno respecto a la ubicación del tubo nasogástrico en el pulmón de la paciente y la advertencia que uno de éstos lanzó a su interlocutor sobre el peligro potencial de una embolia. La codemandante continuaba al lado de su madre y muy cerca de los médicos, quienes —según declaró— se ordenaban alternativamente retirar el tubo de la paciente. En ese instante, ante la mirada y presencia de la codeman-dante, el tubo fue apartado del interior de la señora Pérez.
Precisamente, la presunta colocación equivocada del tubo nasogástrico y la alegada discusión del doctor Mestre Morera son las únicas dos razones por las cuales la parte demandante reclama al galeno en la demanda enmendada que presentó seis años más tarde. Del testimonio de la co-demandante vertido en una deposición surge claramente que desde el día del evento los demandantes conocían la identidad del médico y su alegada responsabilidad en la producción del alegado daño, el cual tuvo su momento cul-minante meses después con el fallecimiento de la señora Pérez. A pesar de estar al corriente de lo anterior, la parte demandante no incluyó al doctor Mestre Morera en su de-manda original. Por el contrario, optó por hacerlo seis años después, actuación que demuestra su dejadez y abandono *393 de esa reclamación.(16) Por lo tanto, según la norma hoy adoptada, la parte demandante debió reclamar individual-mente al doctor Mestre Morera como alegado cocausante solidario dentro del término prescriptivo de un año dis-puesto en el Art. 1868 de nuestro Código Civil, supra, el cual comenzó a transcurrir tan pronto conoció el daño, la identidad del autor y los elementos necesarios para ejerci-tar su causa de acción.
No obstante lo anterior, al evaluar los criterios estable-cidos para declarar la aplicación retroactiva o prospectiva de una determinación judicial —confianza depositada por los demandantes en la antigua norma; propósito que per-sigue la nueva regla para determinar si su retroactividad lo adelanta y el efecto de la nueva normativa en la admi-nistración de la justicia— resolvemos que nuestra decisión debe tener efecto prospectivo. Véanse: Isla Verde Rental v. García, 165 D.P.R. 499, 505 (2005); Datiz v. Hospital Episcopal, 163 D.P.R. 10, 18 (2004); Gorbea Vallés v. Registrador, 131 D.P.R. 10, 16 (1992); Correa Vélez v. Carrasquillo, 103 D.P.R. 912, 918 (1975). Ello porque la norma es de nuevo cuño y su aplicación al presente caso conllevaría re-sultados sustancialmente injustos para los recurridos, quienes confiaron en la norma anterior que quedó despla-zada por la nueva norma que hoy implantamos. Conside-raciones de política pública y orden social motivan a que esta nueva norma tenga efectos prospectivos, pues el obje-tivo que se persigue es conceder remedios justos y equita-tivos que respondan a la mejor convivencia social. López v. Porrata Doria, 169 D.P.R. 135, 169 (2006); Isla Verde Rental v. García, supra. En lo sucesivo, toda causa de acción instada según el Art. 1802 del Código Civil, supra, será juzgada de acuerdo con la normativa aquí intimada.
*394 VI
Por todo lo cual, expedimos el auto de “certiorari”y revo-camos la norma de Arroyo v. Hospital La Concepción, supra, en cuanto a la interrupción del término prescriptivo en reclamaciones al amparo del el Art. 1802 del Código Civil, supra, cuando son varios los causantes de un daño extra-contractual, así como cualquier otro pronunciamiento incompatible con lo aquí resuelto. Además, impartimos ca-rácter prospectivo a la norma adoptada y, en consecuencia, confirmamos la resolución emitida por el Tribunal de Apelaciones. Devolvemos el caso al Tribunal de Primera Instancia para la continuación de los procedimientos.

Se dictará sentencia de conformidad.

La Jueza Asociada Señora Pabón Charneco disintió con una opinión escrita, a la cual se unieron los Jueces Asocia-dos Señores Rivera García y Feliberti Cintrón. La Jueza Asociada Señora Fiol Matta hace la expresión siguiente:
Disiento de la decisión del Tribunal que revoca la norma pautada en Arroyo v. Hospital La Concepción, 130 D.P.R. 596 (1992). Las opiniones en Arroyo y en García Pérez v. Corp. Serv. Mujer, 174 D.P.R. 138 (2008), así como la opinión disi-dente en este caso de la Jueza Asociada Señora Pabón Char-neco y el artículo del profesor José Julián Alvarez González Responsabilidad Civil Extracontractual, 78 Rev. Jur. U.P.R. 457, 473 (2009), explican las razones por las que no debe adop-tarse en nuestra jurisdicción la doctrina in solidum.
Coincido con la Opinión mayoritaria en las dificultades que presenta el que un potencial codemandado sea traído a un pleito años después de instarse el mismo, como cocausante solidario del daño alegado, porque la demanda original inte-rrumpió los términos prescriptivos para todos los cocausantes. Sin embargo, la norma adoptada en Arroyo permitía que se atendiera este problema adecuadamente, pues no impedía en lo absoluto que se consideraran, al amparo de la doctrina de incuria, aquellas circunstancias extraordinarias, como las de autos, en las que un demandante se cruza de brazos y no es diligente en averiguar la identidad de otros posibles cocausan- *395 tes del daño o, de conocerlos, traerlos al pleito. Para ello, no hacía falta recurrir a la doctrina in solidum y dividir la soli-daridad extracontractual entre efectos primarios y secundarios. Lo que correspondía era descartar una aplicación inflexible de la norma de Arroyo y atemperarla para atender situaciones como la de autos sin tener que revocar veinte años de precedentes y adoptar una nueva interpretación del Código Civil. El resultado en este caso hubiera sido, sin duda, la des-estimación de la demanda, no por la aplicación de la nueva doctrina, sino porque el demandante incurrió en incuria al cruzarse de brazos y no enmendar la demanda cuando conoció la identidad de los cocausantes.
Me preocupa que la nueva norma cause más problemas de los que resuelve y produzca situaciones en las que una víctima sea innecesariamente perjudicada. Creo que la Opinión del Tribunal reconoce parcialmente esta realidad y, por eso, se ve obligada a establecer numerosas salvaguardas, creando así un esquema innecesariamente confuso y complicado. Según Arroyo, nuestro ordenamiento daba prioridad a la reparación del daño sufrido por la víctima, mientras protegía a los de-mandados en casos de dejadez y falta de diligencia por parte de los demandantes. Ahora, para proteger a los potenciales codemandados traídos tardíamente a los pleitos, se priva a las víctimas de una de las principales herramientas para intentar resarcir sus daños: la interrupción simultánea de los términos prescriptivos para todos los cocausantes solidarios, sujeto, claro está, a normas básicas de derecho, entre ellas la diligencia. Temo que la consecuencia inevitable de esta deci-sión sea la adopción eventual de una norma de mancomunidad para los casos de responsabilidad civil extracontractual, de-jando sin efecto casi un siglo de precedentes de interpretación estatutaria que no ha sido alterado por la Asamblea Legislativa.
Comparto muchas de las preocupaciones de la Opinión mayoritaria. Sin duda, una aplicación inflexible de la norma de Arroyo podría producir situaciones patentemente injustas para algunos potenciales demandados que quedarían sujetos a que algunos demandantes que se crucen de brazos confiando en que la demanda contra un cocausante interrumpe perpe-tuamente los términos prescriptivos contra los demás. Pero esto se puede atender sin trastocar la norma hasta ahora vigente. Por eso difiero, muy respetuosamente, de la solución adoptada.

 Los familiares demandantes son los siguientes: el Sr. Daniel Fraguada Bo-nilla, el Sr. Héctor L. Fraguada Pérez, la Sra. Ana Hilda Fraguada Pérez, la Sra. María de los Ángeles Fraguada Pérez, el Sr. Carlos Daniel Fraguada Pérez y el Sr. Ángel G. Osorio Fraguada.

 Es necesario aclarar que en el caso ante nos no aplica la Regla 15.4 de Procedimiento Civil de 1979 (32 L.P.R.A. Ap. III), sobre parte demandada de nombre desconocido. Como es sabido, el solo hecho de incluir en una demanda la mención de un nombre ficticio para un demandado no hace que aplique automáticamente esta regla. Esta regla exige que se exponga la reclamación específica y que se conozca la identidad del demandado.
Al examinar la alegación incluida en la demanda nos percatamos que es en extremo sucinta; no se expuso una reclamación de manera específica como requiere la Regla 15.4, supra. Estamos ante una situación de demandado desconocido, por lo que no aplica la citada regla. Aun en el supuesto de que nos encontráramos ante un caso de demandado de nombre desconocido, los demandantes no cumplieron con la exigencia de la Regla 15.4, supra, de realizar la enmienda correspondiente con toda prontitud al descubrirse el nombre verdadero.

 El 18 de mayo de 2006 se concretó un acuerdo de transacción. Los deman-dantes convinieron desistir de la reclamación en cuanto al Hospital Auxilio Mutuo y éste se obligó a pagarles $70,000. El 25 de octubre de 2006 el Tribunal de Primera Instancia emitió una sentencia parcial mediante la cual dispuso del asunto según el acuerdo transaccional habido entre estas partes.

 En esta solicitud, la parte demandante alegó que, como producto del descu-brimiento de prueba, había surgido información de que los mencionados doctores habían sido negligentes en el tratamiento médico brindado a la señora Pérez.
La solicitud realizada en el 2008 para enmendar la demanda no fue para sus-tituir o para indicar los nombres de los demandados de nombres desconocidos, sino que fue para traer al pleito unos nuevos demandados. Además, en la demanda en-mendada del 2008 permaneció la alegación de responsabilidad de los demandados John Doe y Richard Roe que se había incluido en la demanda inicial.

 La alegación sobre el conocimiento de los demandantes de la identidad de los galenos tiene como fundamento una deposición tomada a la codemandante, Sra. María de los Angeles Fraguada Pérez, el 11 de julio de 2005. Apéndice, pág. 101. En ésta, la señora Fraguada Pérez —hija de la señora Pérez— hizo una relación crono-lógica y detallada de lo sucedido según su percepción. En específico, testificó que el día de los hechos alegados, los doctores Mestre Morera y Totti llegaron a la habita-ción de la señora Pérez después de que ella le pidiera a la enfermera que consiguiera a un médico, porque su madre comenzó a toser luego de que le echaran un líquido a través del tubo nasogástrico para realizarle un examen. La codemandante sostuvo que escuchó a los doctores Mestre Morera y Totti ordenarse alternativamente retirar el tubo, porque éste se encontraba en el pulmón y podía causar una embolia. íd. Además, el doctor Mestre Morera puntualizó que, de todas formas, desde el 12 de enero de 2005 los demandantes contaban con un informe de su perito que imputaba desviaciones en la colocación del tubo nasogástrico. Argumentó que si se tomara la fecha de la deposición como el momento del conocimiento de los demandantes sobre los elementos para ejercitar su causa de acción, aun así habrían transcurrido tres años desde ese punto de inflexión en el tiempo hasta que finalmente se le reclamó.

 En esta oposición a la sentencia sumaria, la parte demandante aseguró que una presunta discusión entre los doctores Mestre Morera y Totti se realizó en pre-sencia de los familiares.

 También son relevantes en cuanto a la prescripción los Arts. 1094, 1868 y 1874 del Código Civil, 31 L.P.R.A. secs. 3105, 5298 y 5304.

 Tampoco incluyó al Estado Libre Asociado (E.L.A.) como alegado responsable solidario.

 En esa oportunidad también incorporó al E.L.A. como parte codemandada.

 El Art. 1874 de nuestro Código Civil dispone, en lo pertinente, que “[l]a interrupción de la prescripción de acciones en las obligaciones solidarias aprovecha o perjudica por igual a todos los acreedores o deudores”. 31 L.P.R.A. sec. 5304.

 Algunos tratadistas han atribuido a la doctrina francesa la creación de la obligación in solidum. J.R. León Alonso, La categoría de la obligación “in solidum”, Sevilla, Pubs, de la Universidad de Sevilla, 1978, pág. 32.

 El Art. 1.137 del Código español —idéntico a nuestro Art. 1090, supra— establece lo siguiente:
“La concurrencia de dos o más acreedores o de dos o más deudores en una sola obligación no implica que cada uno de aquéllos tenga derecho a pedir, ni cada uno de éstos deba prestar íntegramente las cosas objeto de la misma. Sólo habrá lugar a esto cuando la obligación expresamente lo determine, constituyéndose con el carácter de solidaria”.

 Reiteramos, además, que lo dispuesto en el Art. 1090 del Código Civil, 31 L.P.R.A. sec. 3101, en cuanto a la no presunción de la solidaridad, no aplica en materia de responsabilidad extracontractual. Asimismo, puntualizamos que no adop-tamos la norma de la obligación in solidum en toda su extensión, sino solo respecto a la interrupción del término prescriptivo cuando coinciden varios cocausantes del daño al amparo del Art. 1802 del Código Civil, 31 L.P.R.A. sec. 5141.

 La solidaridad impropia no admite interrupción automática e indefinida del término prescriptivo en perjuicio de otros cocausantes, los cuales, por su propia culpa, tienen una obligación con el damnificado. La responsabilidad de cada uno de ellos es autónoma de la de los demás, por lo que surge una pluralidad de vínculos independientes. Esta pluralidad requiere que el término prescriptivo contra cada deudor se interrumpa de forma individual, pues la solidaridad imperfecta no nace de un vínculo prexistente, sino del acto ilícito productor del daño según reconocido por la sentencia que lo declare así.

 En Puerto Rico, al igual que ocurrió en España, se han planteado preocu-paciones acerca de la adopción de esta norma. Las inquietudes giran principalmente en torno a que existe un precedente sólido y el posible efecto que este cambio de norma tendría en la seguridad jurídica. De igual forma, se ha señalado que su adop-ción va contra el propósito de la aplicación de la solidaridad en los casos de respon-sabilidad extracontractual. Véase J.J. Álvarez González, Responsabilidad civil ex- *390 tracontractual, 78 (Núm. 2) Rev. Jur. U.P.R. 457 (2009). Diferimos de tal interpretación. Tal como señalamos, el justo balance que se buscaba lograr con la aplicación de la solidaridad en las acciones de daños extracontractuales, en realidad resultó en una mayor protección a la parte demandante, diferimientos indefinidos de causas de acción, entre otros efectos que socaban la estabilidad jurídica. La norma que hoy adoptamos respecto a la interrupción del término prescriptivo cuando coin-ciden varios cocausantes de un daño al amparo del Art. 1802 del Código Civil, supra, logra un justo equilibrio entre las partes y armoniza nuestro ordenamiento jurídico. Tampoco representa una carga mayor para el demandante, quien solo deberá ejercer con diligencia su causa de acción contra todos los posibles cocausantes del daño cuya identidad conozca. Es decir, en total armonía con la teoría cognoscitiva del daño. Otra de las inquietudes expresadas giraba en torno a que la norma que hoy adopta-mos era contraria a la Regla 51.7 de Procedimiento Civil de 1979 (32 L.P.R.A. Ap. III). La mencionada regla fue eliminada del cuerpo de Reglas de Procedimiento Civil de 2009 precisamente por ser “contrari[a] al ordenamiento jurídico, ya que permit[ía] ejecutar una sentencia contra una persona que no fue parte en el pleito y sobre la cual el tribunal no adquirió jurisdicción”. Informe de Reglas de Procedimiento Civil, Tribunal Supremo de Puerto Rico, Secretariado de la Conferencia Judicial y Notarial, marzo 2008, pág. 583. Por ello, consideramos que la necesidad del cambio de norma sobrepasa las preocupaciones expresadas.

 Nótese, además, que desde el 2005 la parte demandante contaba con un informe pericial que le advertía sobre las desviaciones en la colocación del tubo nasogástrico. A pesar de ello, tampoco reclamó al doctor Mestre Morera hasta trans-curridos tres años desde que obtuvo elreferido informe.